## STATE v. MATTHEW T. NORRIS.

*Commercial Fertilizers—Privilege Tax.*

The privilege tax of five hundred dollars levied under the provisions of ch. 274, § 8, Acts 1876–'77, upon manufacturers, &c., of commercial fertilizers, is valid.

INDICTMENT for a Misdemeanor under Laws 1876–'77, ch. 274, § 8, tried at August Term, 1877, of WAKE Criminal Court, before *Strong, J.*

*Special Verdict:* 1. The defendant sold to one Smith on the 25th of June, 1877, one bag of commercial fertilizer known as "Hatchell's Phosphate," at the price of five dollars, and delivered the same to him at and in the County of Wake.

2. No license to make such sale had been obtained by the manufacturer of the said fertilizer from the Treasurer of the State, nor had any money been paid for such license.

3. The said fertilizer was manufactured in the City of

Baltimore by one Hatchell, and by him sent to the defendant at Raleigh for sale on consignment, and was at the time of said sale in the original package in which it had been put at the place of manufacture aforesaid.

4. There is in the State of North Carolina, but a single manufactory of commercial fertilizers, which annually manufactures and sells in the State, fertilizers to the value of $100,000; while fertilizers to the value of $2,000,000 are imported from other States and sold in this State every year.

If upon these facts the Court is of opinion that the defendant is guilty, then the jury find him guilty in manner and form as charged in the bill of indictment; if otherwise, then the jury find him not guilty.

His Honor being of opinion upon the facts found in the special verdict that the defendant was guilty, so adjudged, and the defendant appealed.

*Mr. D. G. Fowle*, who prosecuted in the Court below, appeared with the *Attorney-General*, for the State.

*Messrs. Gilliam & Gatling*, for the defendant.

READE, J. "No manipulated guano, superphosphate, or other commercial fertilizer shall be sold or offered for sale in this State, until the manufacturer, or person importing the same, shall first obtain a license therefor from the Treasurer of the State, for which shall be paid a privilege tax of $500 per annum." Acts 1876–'77, ch. 274, § 8. The violation of the above is made a misdemeanor indictable.

If we consider of the vast amount of adulterated fertilizers which may be, and which probably are imposed upon our farmers, and then consider further of other portions of the same Act, we may be let into its object.

It is entitled an "Act to establish a Department of Agri-

culture," &c. § 9 provides that every bag or package of such fertilizer, offered for sale in this State, shall have stamped upon it the name, location, and trademark of the manufacturer, and the chemical composition of the contents in detail; and the Department may have it analyzed and condemned if found faulty ; and the seller subjected to penalties.

Now why all this, unless to protect the public from imposition, and to keep the traffic in the hands of responsible persons, and to make the means to that end self-sustaining by a license tax?

But still that statute has to be considered in connection with the following provisions in the Constitution of the United States:—

" Congress shall have power to regulate commerce with foreign nations and among the several States." Art. I, § 8 (3.)

" No State shall levy any imposts or duties, on imports or exports." Art. I, § 10 (2.)

" The citizens of each State shall be entitled to all the immunities and privileges of citizens of the several States." Art. IV, § 2 (1). And if our statute is in conflict with any of those provisions, it must fall.

Those provisions in the United States Constitution have been so often before the Supreme Court of the United States during the last half century, and have been so fully considered in all their bearings, that it would be venturesome in any one to attempt to add any new thoughts upon them, and the learning in regard to them is so familiar to the profession, that it would be a useless display to elaborate it. *Brown* v. *Maryland,* 12 Wheat, 419; *The License Cases,* 5 Howard, 576, 592; *Pierce* v. *New Hampshire,* 5 Howard, 554 ; *Woodruff* v. *Parham,* 8 Wall. 123 ; *Hinson* v. *Lott,* 8 Wall. 148.

The two last cases we regard as in point; and being lately decided and reversing all former decisions, and being by all the Judges save one, we regard them as decisive of this case. They establish the doctrine " that the term 'import' as used in that clause of the Constitution which says that no State shall levy any imposts or duties on imports or exports, does not refer to articles imported into one State from another, but only to articles imported from a foreign country into the United States. Hence a uniform tax imposed upon *all* sales made in a State whether by a citizen of the State, or of some other State, and whether the goods sold are the produce of that or of some other State, is valid."

We do not enter into any consideration of the question whether and in what cases, Congress may, if it think proper, tax imports into one State from another; or whether and in what cases, a State may tax or prohibit importations into its borders from other States, as police regulations in case of morals and health, for that is not our case. The statute under consideration does neither prohibit nor tax importations from other States. On the contrary, it assumes the importations to have been accomplished, and standing upon a footing with the same article made in the State by its own citizens, and in granting the license to sell, makes no discrimination whatever. And the fact that more is brought into the State than is made within it is an *accident*, and does not affect the main fact.

The clause in the Constitution of the United States, that " the citizens of each State shall be entitled to all the immunities and privileges of citizens of the other States," does not give to citizens of other States coming into this State, the immunities and privileges which they may have had at home, nor does it give them greater immunities and privileges here, because they are strangers, than our own citizens have, but only the same, putting all on equal footing. No

STATE *v.* NORRIS.

citizen of this State can make a commercial fertilizer and sell it without the license. Why then should a citizen of another State have a greater privilege?

The tax is valid.

No error.

PER CURIAM.                    Judgment affirmed.