Blatchfoed, 0. J.
On the 20th of October, 1876, the libellants filed a libel in admiralty, in the district court of the United States for the eastern district of New York, against the barge John M. Welch, in a cause of wharfage and dock-age. It alleged that the libellants, being the lessees, and in possession of a wharf or pier, at or near the foot of Bank street, in the city of New York, and the slip or basin appeartaining thereto, and, in accordance with the laws of the state of New York in such behalf made and provided, authorized to collect wharfage and dockage from vessels lying at said wharf or pier, or within said slip or basin, furnished for said vessel a berth, which she occupied from including October 9, 1876, to and including October 20, 1876; that thereby there became due and owing to the libellants, from said vessel, *365 $34.20, for wharfage and dockage as aforesaid; that payment thereof was duly demanded of and from said vessel, that said amount is a maritime lien upon said vessel; and is a lien thereupon by the laws of the state of New York; that neither the master nor the owners of said vessel have paid to the libellants the said sum; and that said sum, with interest, is still due to the libellants. On process issued on this libel the vessel was attached. On the return day, James T. Easton and James McMahon appeared and put in a claim to the vessel, and gave stipulation for her value, and then filed an answer containing exceptions. The answer alleged that process of condemnation ought not to issue against said vessel, because — (1) no maritime lien exists against the vessel, because of the matters set forth in the libel (2) no lien is given for wharfage, against vessels, by any law of the state of New^ York; (3) the law of the state of New York referred to in the libel as giving a lien for wharfage against boats and vessels, and which law was passed on the sixth day of May, 1870, is void and unconstitutional, for the following reasons: First, it imposes a restriction on commerce ; Second, it imposes a duty of tonnage on all vessels of the character and description of the barge John M. Welch; Third, it draws a distinction, which is practical and effectual, between all such barges as the John M. Welch, owned by persons who are not citizens of the state of New York, and the same class of boats owned by citizens of the state of New York, which is done under cover of a nominal distinction between boats or barges plying on the eanals, or between ports of the state of New York, and the same class of boats plying between any port of the state of New York and the ports of another state. The answer, further set up that, while it was admitted that from the ninth to the twentieth days of October, 1876, the John M. Welch was given inside wharfage at the wharf aforesaid for which wharfage the claimants should pay a reasonable compensation to whomsoever said compensation is legally due, the claimants denied that for the use of said wharf for the period aforesaid, of eleven days, the sum of $34.20, *366 claimed in the libel, is a reasonable and just compensation. It further alleged that seventy-five cents a day, for the use of said wharf by said boat, is a reasonable and just compensation, and the only sum that can be reasonably and lawfully claimed for the wharfage of a barge of the character of the John M. Welch, because it had been the price invariably charged for the wharfage of such boats for many years previous to the year 1870, and still is, and ever since has been, the rate of wharfage per day of the same class of boats as is the John M. Welch, which were engaged in navigating the canals of the state of New York, and were employed upon its rivers.
The foregoing pleadings having been put in, the claimants made an application to the supreme court of the United States for a writ of prohibition, to restrain the district court from exercising jurisdiction of the suit. The application was founded on a petition, which set forth the following matters: The John M. Welch is a vessel of about 209 tons carrying capacity. She is without sails or self-motive power of any kind. She cannot be used independently of extra motive agency. On the twentieth of October, 1876, the day when the process was issued against her, she had completed a trip from the .city of Baltimore, bringing a cargo of coal, and forming one of a tow of barges, all under the lead of a steam-tug, which made the trip from Baltimore to New York by way of the Chesapeake and Delaware canal, the Delaware river, and the Delaware and Baritan canal. She reached the port of New York on the tenth of October, 1876. She took wharfage at the pier or wharf at the foot of Bank street, North river, and remained there till the twentieth of the same month. A bill of wharf-age was rendered by the libellants, charging for nine days inside wharfage, at $3.60 a day, and for one day outside wharfage, at $1.80 a day, amounting in all to $31.20. The petitioners are, and for many years have been, the owners of a large number of such barges as the John M. Welch, all of them of the same description and character, and of the same tonnage. The petitioners have been engaged in the said business of transportation for nearly 20 years. Some of their *367 boats, during this time, have plied between the ports of Buffalo and New York, by way of the Brie canal and the Hudson river. Others have plied on the Hudson river exclusively, while others, and much the largest number, have plied between Baltimore, Philadelphia and New York, by way of the Delaware and Earitan canal. But all of these boats have been, and are of the same class, and the same boats have never exclusively been employed on the same waters. It has been, and still is, a matter of convenience simply whether the same boat should be sent to Baltimore or to Buffalo. From 1870 to 1874 the number of boats or barges thus owned and employed by the petitioners was about 300 each year. From 1874 to the present time the number has been about one-half as large each year. Previous to the year 1870, and, indeed, previous to the year 1875, (for until the year 1875 the distinction of rates of wharfage now complained of was not enforced practically, or, rather, generally,) the wharfage on all these boats or barges, at the port of New York, for the use of New York or Brooklyn wharves, was 50 or 75 cents per day for each boat, according as the boat had inside or outside wharfage. No question was made as to where the boat or barge came from. Her owners were required to pay only 50 or 75 cents per day, for use of the wharf, to the wharf owners. At the present time, and always heretofore, no greater sum is or has been demanded for wharf-age of canal boats or barges plying on the canals and rivers of the state of New York than 50 cents or 75 cents per day for each boat. At this rate, the wharfage of the John M. Welch, for the period of 10 days, would have been not more than $5 or $7.50, which is about one-sixth of the amount claimed in the libel. No greater wharfage than $5 or $7.50, for ten days’ wharfage, would have been demanded of the owners of the John M. Welch, as the petitioners, from their own experience, know, if the said barge had, on the tenth of October, 1876, completed a voyage from Buffalo to New York, instead of from Baltimore to New York. In respect of the petitioners’ own business this distinction of wharfage rates, so far as any accurate calculation can be made, and speaking from the data given by the business transactions of the *368 years from 1870 to 1874, would not be less than $5,000 per year. In the years 1875 and 1876 the distinction would amount to less, because the petitioners’ business was lighter then than in the preceding years. For the coming season this distinction may be greater or less than $5,000. As regards the subject of any single lien sought to be enforced in a court of admiralty, the excess of wharfage on any one canal-boat or barge would seldom, if ever, be $50.
The statute of the state of New York as to wharfage and dockage, referred to in the libel, is the statute enacted on the sixth of May, 1870. This law was subsequently, amended in the years 1872, 1875 and 1876, but its essential feature as to distinction of wharfage between canal-boats plying on the waters of New York state exclusively, and all other canal-boats and barges, has not been changed. “The same rates as heretofore,” which are required by said statute to be paid by “all canal-boats navigating the canals in this state,” are the rates of 50 cents and 75 cents per day for each boat. The district court of the United States for the eastern district of New York, sitting as a court of admiralty, enforces a lien against canal-boats or barges, in causes of wharfage, and in favor of wharf owners, under the provisions of the said law of the state of New York, on one or both of the two following grounds: (1) That the law of the state of New York gives a lien, enforceable in admiralty, for wharfage, at the rate of two cents for every ton up to 200 tons burden, for each day’s wharfage, against all canal-boats .except those which navigate the canals of the state of New York; (2) that there is a general maritime lien for wharfage against canal-boats, enforceable in admiralty, the amount of which lien is to be determined by the law of the state of New York; that, as to canal-boats navigating the Erie canal, the amount of lien, as so determined, is 50 cents per day; and that, as to the same kind of craft navigating the Delaware and Raritan eanal, it is from $3.50 to $4 per day. A lien has been enforced by the said district court, for wharfage, against the canal-boat Ann Ryan, on a state of facts identical with the facts above set forth. The proceedings therein were under, and to enforce *369 the provisions of, the same statute, and the same rate of wharfage, as in the case now pending. Reference is made to The Ann Ryan, 7 Benedict, 20. If the petitioners have any grievance that can or ought to be redressed, no other remedy than by writ of prohibition is available or possible to them. Being citizens of the same state as the libellants, they cannot ask equitable relief by original action in any federal court. The amount involved in the pending cause being less than $50, there is no appeal open to the petitioners, if their boat should be condemned by the district court; and that it would be condemned, on final hearing, they can have no doubt, in view of the decision of the same court in the case of the Ann Ryan. But the amount actually involved to the petitioners, if presented in one cause of appeal, would be large enough to give the supreme court of the United States jurisdiction. They are advised that they ought not to apply to the courts of the state of New York for relief against proceedings which wharf owners contemplate taking in a federal court, much less against proceedings already begun in a federal court. Should the supreme court grant the petitioners’ motion for an alternative writ of prohibition to the said district court, sitting as a court of admiralty in said cause, the petitioners, on the return to the same, will submit in their behalf the following propositions, the contrary of which they believe to be error: (1) That, in a cause of wharfage, there is no lien given by the general maritime law; that the laws of the state of New York give no such lien; and that, therefore, the said district court, as a court of admiralty, cannot proceed in rem to enforce a wharfage claim; (2) that, if there is a general maritime lien, the law of the state of New York cannot be invoked to determine the amount of such lien; that the law of the state of New York, enacted May 6, 1870, and its amendments, is repugnant to the constitution of the United States, in so far forth as it makes a distinction in wharfage rates between canal-boats plying on its own waters and all other canal-boats. A law which makes such a distinction does not impose on vessels, for the use of wharves, a mere compensatory payment. A compensatory payment merely *370 must be general and uniform. The excess of wharfage demanded of all other canal-boats than those navigating New York waters is a duty of tonnage. The law is, moreover, such a restriction of commerce as a state has no right to make, even in the absence of federal legislation. It is also repugnant to the federal constitution, because its practical effect, as was its undoubted intention, is to draw a distinction between small craft owned by citizens of the state of New York, and the same kind of vessels owned by citizens of other states, in favor of the former.
The statute above referred to, enacted May 6, 1870, (Laws of New York, 1870, c. 707, § 1,) was in these words: “It shall be lawful to charge and receive, within the cities of New York and Brooklyn, wharfage and dockage at the following rates, viz.: From every vessel that uses or makes fast to any pier, wharf or bulk-head, within said cities, or makes fast to any vessel lying at such pier, wharf or bulk-head, or to any other vessel lying outside of such vessel, for every day, or part of a day, as follows: From every vessel of 200 tons burden and under, two cents per ton; and from every vessel over 200 tons burden, two cents per ton for each of the first 200 tons, and one-half of one cent per ton for every additional ton, except that all canal-boats navigating the canals in this state, and vessels known as North river barges, shall pay the same ratSs as heretofore; and the class of sailing vessels now known as lighters shall be at one-half the first above rates; but every other vessel making fast to a vessel lying at any pier, wharf or bulk-head within said cities, or to another vessel outside of such vessel, or at anchor within any slip or basin, when not receiving or discharging cargo or ballast, one-half the first above rates, and no boat or vessel shall pay less than 50 cents for a day, or part of a day; and from every vessel or floating structure other than those used for transportation of freight or passengers, double the first above rates. And. every vessel that shall leave a pier, wharf, bulk-head, slip or basin, without first paying the wharfage or dockage due thereon, after being demanded of the owner, consignee, or person in oharge *371 of the vessel, shall be liable to pay double the rates established by this act. ”
The supreme court denied the petition for the writ of prohibition. Ex parte Easton, 5 Otto, 68. The opinion of the court was delivered by Mr. Justice Clifford. It holds that the admiralty jurisdiction extends to wharfage, as an essentially maritime contract, claim or service; that where a wharf is used without an agreement as to the measure of compensation, there is an implied contract, under which tho proprietor is entitled to recover what is just and reasonable for the use of his property; that the nature of the service and the character of the contract are not changed by the circumstance that the water craft which derives the benefit is, as in this ease, without sails or masts, or other motive power of her own; and “that the contract for wharfage is a maritime contract, for which, if the vessel or water craft is a foreign one, or belongs to the port of a state other than that where the wharf is situated, a maritime lien arises against the ship or vessel in favor of the proprietor of the wharf.” The opinion further states that the question whether the district court has or has not transcended its jurisdiction, in entertaining the suit in question, must depend not on facts stated dehors the record, but on those stated in the record on which the district court is called to act, and by which alone it can regulate its judgment; and that mere matters of defence, whether going to oust the jurisdiction of the court, or to establish the want of merits in the libellants’ case, cannot be admitted, under a petition for a writ of prohibition, to displace the right of the district court to entertain suits, the rule being that every such matter should be propounded by suitable pleadings, as a defence, for the consideration of the court, and be supported by competent proofs, provided the case is one within the jurisdiction of the district court. These remarks mean that the supreme court could only look at the allegations of the libel. The libel was the only record on which the district court was called to act when it entertained jurisdiction of the suit, by issuing process of attachment against the vessel. The libel alleged that there was a maritime lien on the vessel for the wharfage, and that *372 there was also a lien, therefor on the vessel by the laws of the state of New York. The libel alleged facts which showed that there was a maritime lien on the vessel, if she was a foreign vessel or was a vessel belonging to a port of a state other than the state of New York. The libel did not show where the vessel belonged, nor did the answer. The supreme court said, in effect, that it could - not prohibit the district court from exercising jurisdiction in rem over the vessel, because if the vessel was a foreign one, or belonged to a port of a state other than the state of New York, the district court would have such jurisdiction in rem in the case; and, as the libel did not show that the vessel was not a foreign one, or did not belong to a port of a state other than the state of New York, it was not shown that the district court was proceeding without jurisdiction; and that a matter of defence, going to oust the jurisdiction of that court, such as the fact that the ownership of the vessel was such as to oust the jurisdiction, not being shown by the libel when the process was issued, could not be shown on the motion for the writ of prohibition by the petition, or by a reference to the answer, but must be left to be shown by proofs under an answer alleging such fact. Therefore, the opinion goes on to say: “Yiewed in the light of these considerations, it is clear that a contract for the use of a wharf by the master or owner of a ship or vessel is a maritime contract, and, as such, that it is cognizable in the admiralty; that such a contract, being one made exclusively for the benefit of the ship or vessel, a maritime lien, in the case supposed, arises in favor of the proprietor of the wharf against the vessel for the payment of reasonable and customary charges in that behalf for the use of the wharf, and that the same may be enforced by a proceeding in rem against the vessel, or by a suit in personam against the owner.” The language is that the lien arises “in the case supposed.” The case supposed, in the prior part of the opinion, is stated to be, “if the vessel or water craft is a foreign one, or belongs to a port of a state other than that where the wharf is situated. ” Judge McKennan, in the recent case of The Bob Connell, 26 Int. Rev. Rec. 101, says that in the case of Ex parte Easton the supreme court affirmed *373 that “a lien for wharfage furnished to a domestic vessel does not exist.” Certainly, that court did not decide, in that case, that a lien by virtue of the general maritime law, for wharf-age furnished to a domestic vessel, does exist. Nor did it decide that a libel in rem in admiralty could not be brought against a vessel for wharfage, on the basis of a lien against the vessel, where such lien was created by a valid statute of the state.
After the writ of prohibition was refused, the libel in the district court was amended, by inserting in it allegations that the vessel left the pier, wharf and slip without first paying the wharfage or dockage due thereon; that the libellants, therefore, became entitled to demand from the vessel, for wharfage, double the amount before named, to-wit, $60; that the vessel came to said wharf having on board a cargo of coal, from the city of Baltimore, Maryland, and made said trip by way of the Chesapeake and Delaware canal, Delaware river, and Delaware and Baritan canal; and that the owners of said barge reside in the state of New York. The amended libel claims to recover the $60, with interest, and retains the avermentsas to the maritime lien, and as to the lien by the laws of the State of New York. It was stipulated that the answer before filed should stand as the answer to the amended libel.
The parties then agreed, in writing, upon the following as-the statement of the facts in the action: “First, that, at the times stated in the libel, the libellants were lessees of, and in possession of, the wharf named in the libel, and authorized to demand and collect wharfage from vessels lying thereat; second, that the barge John M. Welch lay at said wharf during the period named in the libel, and left without payment of wharf-age, and that the amount of wharfage due the libellants on such account, as fixed by the wharfage law of New York, a copy of which is annexed, is $60, and the same has not been paid to the libellants; third, that said barge is owned by persons residing in the state of New York; fourth, that said barge came to said wharf, as aforesaid, with a load of coal, from Baltimore, Md., as set forth in the libeL”
On such pleadings and statement of facts the case was *374 tried by the district court. It gave a decree for the libellants for $60, and $5.79 interest, and $65.37 costs. The claimants have appealed to this court.
The district judge, in his decision in this case, states, that the questions, first, whether a contract for wharfage is a maritime contract, and so within the jurisdiction of the admiralty, and, second, whether, by the maritime law of the United States, a lien upon the vessel arises out of such a contract, were set sat rest by the determination of the supreme court in Ex parte Easton; that the case before that court was that of a domestic vessel; that the libel claimed a lien by the maritime, law alone, without any reference to the statute of New York, or to any claim or right based thereon; that, from the pleadings, the petition, and the petitioner’s brief before the supreme court, there was no room to doubt that the case was understood by .that court to present the question, whether the contract of wharfage, by the maritime law of the United States, gives rise to a lien on the vessel; that the question of a lien for wharfage by the maritime law upon a foreign vessel was not the question presented by the ease before that court; that the question of a lien for wharfage by the maritime law upon a domestic vessel was the question presented to that court for its decision; that the opinion of that court declares the law to be, without exception, not only that the contract for wharfage is a maritime contract, but, also, that a maritime lien .arises in favor of the wharfinger against the vessel, for the payment of reasonable and customary charges for the use of his wharf; and that, therefore, the question is no longer open whether the rule applied to the demands of material-men .against -a domestic vessel is to be applied to demands for wharfage.
The review before given of the decision of the supreme court in Ex parte Easton shows that this court does not concur with the district court in its interpretation of that decision. Having .decided that there was, in this case, a maritime lien, the district court did .not consider the question as to whether there was a lien by the law of New York, as alleged in the libel, which the court could and would enforce *375 in admiralty, by a suit in rem against tbe vessel. It proceeded to examine the question as to the constitutionality of the wharfage statute of New York, applicable to wharfage at wharves in New York and Brooklyn, and held it to be valid, and a statute to be resorted to in order to determine the rate of wharfage for the wharfage service rendered by the libellants.
The statute of New York, of 1870, before set forth, was followed by the act of 1872, hereafter referred to, and that again by the act of May 21, 1875, (Laws of New York, 1875, c. 405, p. 482.) The present case arose after the latter date. The act of 1875 amends section 1 of the act of 1872, so as to read as follows: “Section 1. It shall be lawful to charge and receive, within the cities of New York, Brooklyn and Long Island City, wharfage and dockage at the following rates, namely: Thom every vessel that uses or makes fast to any pier, wharf or bulk-head within said cities, or makes fast to any vessel lying at each pier, wharf or bulk-head, or to any other vessel lying outside of such vessel, for every day or part of a day, as follows: From every vessel of two hundred tons burden and under, two cents per ton, and for every vessel over two hundred tons burden, two cents per ton for each of the first two hundred tons, and one-half of one cent per ton for every additional ton, except that all canal-boats navigating the canals of this state, vessels known as North river barges, market boats, and sloops employed upon the rivers of this state, and schooners exclusively employed upon the rivers of this state, shall pay the same rates as such boats or barges were liable to pay under the provisions of the act passed April tenth, eighteen hundred and sixty; but no boat or vessel shall pay less than fifty cenus for a day, or part of a day, and the class of sailing vessels now known as lighters shall be at one-half the first above rates; but every other vessel making fast to a vessel lying at any pier, wharf or bulkhead within said cities, or to another vessel outside of such vessel, or at anchor within any slip or basin, when not receiving or discharging cargo or ballast, one-half the first above rates; and from every vessel or floating structure other *376 than those above named, or used for transportation of freight or passengers, double the first above rates, except that floating grain elevators shall pay one-half the first above rates; and every vessel that shall leave a pier, wharf, bulk-head, slip or basin, without first paying the wharfage or dock-age due thereon, after being demanded of the owner, consignee or person in charge of the vessel, shall be liable to pay double the rates established by this act.”
The act of April 10,1860, (Laws of New York, 1860, e. 254, p. 416,) contained these provisions: “Section 1. It shall be lawful to charge and receive wharfage or dockage at the following rates, from every vessel that uses or makes fast to any pier, wharf or bulk-head within the cities of New York or Brooklyn, for every day, or part of a day’s use of the same, viz.: From every vessel of two hundred tons burden or under, one cent per ton; and for every vessel over two hundred tons, one cent per ton for each of the first two hundred tons, and for every additional ton burden, one-fourth of one cent per ton; and from every vessel making fast to another vessel lying at any pier, wharf or bulkhead, and for every vessel lying at anchor within any slip or basin, one-half of the above rates. Sec. 2. The captain or owner of any vessel that shall leave a wharf without paying for the wharfage due thereon, and shall neglect to pay the same for twenty-four hours after demanded of the captain, owner or consignee, shall forfeit and pay to the owners of the wharf double the rates of wharfage hereby established, and the wharfage shall be a lien on the vessel. * * * gee. 6. Nothing contained in this act shall be construed as altering the rates of wharfage chargeable on lighters, canal-boats or barges, by existing laws. Sec. 7. The collection of the rates of wharfage established by this act shall be enforced in the manner prescribed in the two hundred and seventh section of the act of ninth of April, eighteen hundred and thirteen.”
The act of 1860 is entitled “An act in relation to the rates of wharfage, and to regulate piers, wharves, bulk-heads and slips in the cities of New York and Brooklyn. ” It was followed by the act of 1870, before recited, which is entitled “An act to *377 amend an act in relation to the rates of wharfage, and to regulate piers, wharves, bulk-heads and slips in the cities of New York and Brooklyn, passed April 10, 1860.” Section 3 of the act of 1870 repeals all acts and parts of acts inconsistent with its provisions. It does not repeal, in so many words, any part of the act of 1860. In respect to the single and double rates of wharfage imposed by the first and second sections of the act of 1860, and to the rates of wharfage on fighters, canal-boats and barges, the act of 1870, by its first section, alters such rates, and imposes, in certain cases, double rates. But the act of 1870 does not take away any lien given by the act of 1860. The act of 1860, when amended, by inserting in it the rates prescribed by the act of 1870, contains a provision for a lien for those rates to the same extent it did for the rates of the act of 1860. There is nothing in the continued existence of such lien, under the new rates, inconsistent with the mere substitution of new rates. The act of 1870 was followed by the act of April 23,1872, (Laws of New York, 1872, c. 320, p. 799,) which is entitled “An act to amend an act in relation to the rates of wharfage, and to regulate piers, wharves, bulk-heads and slips in the cities of New York and Brooklyn, passed May 6, 1870.” Section 1 of the act of 1872 does not vary at all from the same section as amended by the act of 1875, as before recited, except that that section, as so amended, includes Long Island City as well as New York and Brooklyn. Section 3 of the act of 1872 repeals all acts and parts of acts inconsistent with its provisions. It does not repeal, in so many words, any part of the act of 1860-Being an amendment, on its face, of the act of 1870, and that being an amendment, on its face, of the act of 1860, the act of 1872 must be regarded as an amendment of the act of 1860, in respect to single and double rates of wharfage, and as not taking away any lien given by the act of 1860. The act of 1860 is to be regarded, after the passage of the act of 1872, as containing the rates prescribed by the act of 1872, with the provision for a lien. The lien is not inconsistent with the mere substitution of new rates. The act of 1872 was followed by the act of 1875, before recited. It is entitled “An act to *378 amend chapter 320 of the laws of 1872, entitled ‘An act to amend an act in relation to the rates of wharfage, and to regulate piers, wharves, bulk-heads and slips in the cities of New York and Brooklyn.’ ” Its first section amends section 1 ■of the act of 1872, so as to read as before recited. The act of 1875 repeals nothing. Por the reasons before stated, it must he regarded as an amendment to the act of 1860, in respect to rates, and as not taking away any lien given by the act of 1860. The act of 1860 is to be read as containing the rates prescribed by the act of 1875, with the provision for a lien.
Before reaching the question as to whether there was alien on the John M. Welch, enforceable in admiralty, by a suit in rein, either by the maritime law or by the state statute, it is necessary to examine the provisions of the act of 1875 to see whether that act is a valid and constitutional enactment, in its application to that boat. The district court held that it is.
Objection is made to that clause of the act of 1875 which subjects canal-boats navigating the canals of the state of New York to a less charge for wharfage than canal-boats not navigating the canals of that state. It is urged that that clause makes a discrimination between the property of citizens of different states; that it discriminates against the claimants’ barge in this case, because it did not come through a canal of this state, but came from Baltimore, with a load of coal, through other canals; and that the reasonable compensation for the wharfage of two canal-boats of equal tonnage must be the same, although one comes through the canals of this state and the other comes through other canals. It is contended that the statute is in conflict with section 8 of article 1 of the constitution of the United States, which provides that the congress shall have power “to regulate commerce with foreign nations, and among the several states; ” and with section 9 of article 1, which provides that “no preference shall be given, by any regulation of commerce or revenue, to the ports of one state over those of another; ” and with section 10 of article 1, which provides that “no state shall, without the consent of congress, lay any duty of tonnage;” and with section 2 of article 4, which provides that *379 “the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states.” Although the statute of New York does not provide, in terms, that a canal-boat of a given tonnage, owned by a citizen of New York, shall pay less wharfage than a canal-boat of the same tonnage owned by a citizen of another state, yet it is urged that the same result is accomplished indirectly, for the reason, that, when the canal-boat which does not navigate the canals of the state of New York, but comes from another state, through another canal, is owned by a citizen of another state, and brings a cargo from another state, the extra wharfage she must pay must be added to the charge for carrying the cargo, effecting thus a discrimination against citizens of other states; and that, in any event, such increased charge would, in practice, be an extra burden on merchandise coming from other states, or on canal-boats coming from other states.
The John ,M. Welch, it is admitted, came to New York through the canals named in the libel. Consequently, she does not fall within the exception of a canal-boat navigating the canals of the state of New York. Her exact tonnage is not stated, but it is inferred to have been 180 tons. At two cents per ton per day, her single rate of wharfage would, under the act of 1875, be $3.60 per day. If she were a canal-boat of 180 tons, navigating the canals of the state of New York, her rate of wharfage, under section 6 of the act of 1860, would be the rate prescribed by section 212 of the act of April 9, 1813. 2 Eev. Laws of 1813, 429. That rate would be 87rr cents per day. Under all circumstances, whatever her tonnage, (if over 25 tons,) her wharfage rate would be higher under the act of 1875, if not navigating the canals of New York, than if navigating those canals.
In the case of The Ann Ryan, 7 Benedict, 20, the district court for the eastern district of New York held that the act of 1870 was valid, even though a regulation of commerce, in the absence of any statute of the United States on the subject of wharfage, and that, while the act made discrimination in favor of the canal navigation of the state of New York, it made none in favor of the citizens of that state.
*380 In its decision in the present case the district court considered the proposition that the act of 1875, under the name of wharfage, allowed a greater sum to be charged against the John M. Welch than was a reasonable compensation for the use of the wharf, as the reasonable compensation must be the same whatever canal the boat navigated, and that the extra charge was, in substance, a burden imposed by the state upon commerce and navigation among the states, and that the act was, therefore, an illegal regulation of commerce in that respect, and repugnant to the constitution of the United States. The court held that it could not decide that the sum charged against the John M. Welch by the act of 1875 was more than a reasonable compensation for the service. It said: “If want of apparent reason — I do not say that reasons do not exist — for the distinction in rate made by the statute between canal-boats engaged in navigating the canals of this state, North river barges, market boats, sloops employed upon the rivers of this state, schooners exclusively employed upon the rivers of this state, lighters and other vessels, permits the conclusion that some of the rates are unreasonable, how can it be declared to be the higher rate rather than the lower rate that is the unreasonable rate ? Moreover, if the state of New York has the right to fix rates of wharfage, I am unable to see how any rate declared by this statute to be legal, can by the courts be declared unreasonable, and for that cause illegal. The power of the state over the subject-matter of wharfage rates includes the power to discriminate as to the rate between vessels belonging to different classes ■ and between vessels engaged in different occupations; and, when distinctions of that character are found in the statutes of the state, it must be presumed by the courts that those distinctions are founded upon some good reason. One reason may be found in the fact that vessels engaged in certain kinds of navigation are necessarily compelled to spend a greater portion of their time at the wharf than is ever spent by vessels in different employment, and so may justly be allowed to obtain their wharfage at a less rate per day.” Again, the court said: “The statute in no way *381 favors the tonnage owned by citizens of New York, nor does it directly or indirectly establish an inequality in commercial intercourse. "While its effect, taken in connection with the other statutes of the state, is to allow wharfingers to charge different rates of wharfage, according to circumstances prescribed in the act, still, neither in words nor in operation, does it create a distinction between the citizens of different states, or between commerce among the states and purely internal commerce. - Those citizens of New York whose canal-boats navigate the harbor of New York and the Bast and the Hudson rivers, pay the same rate of wharfage as do those citizens of other states whose boats are engaged in the same business; and those citizens of other states whose boats are engaged in navigating the canals of this, state, pay the same rate of wharfage as do the citizens of New- York who are engaged in that business. The most that can be said is that the statute has an indirect effect to favor the navigation of the canals and rivers of this state, by reducing the amount of port charges incident to voyages upon those waters. But the act is, nevertheless, in substance and effect, a wharfage act, and I am unable to see how the indirect effect above indicated renders it repugnant to any provision in the constitution of the United States. Bor these reasons, I am of the opinion that the present wharfage act of New York, above set forth, is a valid enactment, and, therefore, to be resorted to by this court in order to determine the rate of wharfage which the libellant is entitled to charge for the wharfage service shown to have been rendered.”
In the recent case of Guy v. The Mayor, etc., of Baltimore, (12 Chicago Legal News, 262,) decided by the supreme court of the United States, it is said that it must be regarded as settled, in view of the decisions of that court in Woodruff v. Parham, (8 Wall. 123,) in Hinson v. Lott, (8 Wall. 148,) in Ward v. Maryland, (12 Wall. 418,) in Welton v. State of Missouri, (91 U. S. 275,) and in other cases, that no state can, consistently with the federal constitution, impose upon the products of other states brought therein for sale or use, or upon citizens because engaged in the sale therein, or the transportation *382 thereto, of the products of other states, more onerous public burdens or taxes than it imposes upon the like products of its own territory. In the case referred to, Gruy, a citizen of Virginia, as master and part owner of a vessel, brought from Virginia to Baltimore, in Maryland, a cargo of potatoes, raised in Virginia, and landed his vessel at a public wharf in Baltimore, belonging to the city, and discharged therefrom potatoes and was charged wharfage, which he refused to pay. He was sued by the city, and the judgment for the amount was recovered against him. The claim arose under an ordinance of the city, authorized by an act of the legislature of Maryland. The ordinance made the master or owner of a vessel landing or depositing on the wharf articles other than the production of the state of Mainland, liable for the wharf-age fixed by the ordinance on such articles. The supreme court held that the ordinance and the act were, in the above respect, in conflict with the power of congress over the subject of commerce. In the decision it is said: “It is admitted that such wharfage dues are not and never have been assessed against parties or vessels bringing to that port potatoes or other articles grown in the state of Maryland. The argument in support of the statute and ordinance upon which the judgment below rests is that the city, by virtue of its ownership of the wharves in question, has the right, in its discretion, to permit their use to all vessels landing thereat with the products of Maryland; and that those operating vessels laden with the products of other states cannot justly complain, so long as they' are not required to pay wharfage fees in excess of reasonable compensation for the use of the city’s property. This proposition, however ingenious or plausible, is unsound both upon principle and authority. The municipal corporation of Baltimore was created by the state of Maryland to promote the public interests and the public convenience. The wharf at which the appellant landed his vessel was long ago dedicated to public use. The public, for whose benefit it was acquired, or who are entitled to participate in its use, are not alone those who may engage in the transportation to the port of Baltimore of the products of Maryland. *383 It embraces, necessarily, all engaged in trade and commerce upon the public navigable waters of the United States. Every vessel employed in such trade and commerce may traverse those waters without let or hindrance from local or state authority; and the national constitution secures to all so employed, without reference to the residence or citizenship of the owners, the privilege of landing at the port of Baltimore with any cargo whatever not excluded therefrom by, or under the authority of, some statute of Maryland enacted in the exercise of its police powers. The state, it will be admitted, could not lawfully impose upon such cargo any direct public burden or tax because it may consist, in whole or in part, of the products of other states. The concession of such a power to the states would render wholly nugatory all national control of commerce among the states, and place the trade and business of the country at the mercy of local regulations, having for their object to secure exclusive benefits to the citizens and products of particular states. But it is claimed that a state may empower one of its political agencies, a mere municipal corporation, representing a portion of its civil power, to burden inter-state commerce by exacting from those transporting to its wharves the products of other states wharfage fees which it does not exact from those bringing to the same wharves the products of Maryland. The city can no more do this than it or the state could discriminate against the citizens or products of other states in the use of the public streets or other public-highways. The city of Baltimore, if it chooses, can permit the public wharves which it owns to be used without charge. Under the authority of the state it may also exact wharfage fees, equally, from all who use its improved wharves, provided such charges do not exeeed what is a fair renumeration for the use of its property. Northwestern Packet Co. v. City of St. Louis, 12 Chicago Legal News, 225, and City of Vicksburg v. Tobin, Id., decided at the present term; Packet Co. v. Keokuk, 95 U. S. 80. But it cannot employ the property it thus holds for public use so as to hinder, obstruct or burden inter-state commerce, in the interest of commerce wholly internal to that *384 state. The fees which it exacts to that end, although denominated wharfage dues, cannot be regarded, in the sense of our former decisions, as compensation merely for the use of the city’s property, but as an expedient or device to accomplish, by indirection, what the state could not accomplish by a direct tax, viz.: build up its domestic commerce by means of unequal and oppressive burdens upon the industry and business of other states. Such exactions, in the name of wharfage, must be regarded as taxation upon inter-state commerce.”
These views cover the question in the present case. It is a burden upon inter-state commerce to exact from a canal-boat of a given tonnage, bringing a cargo of coal from Baltimore, through canals not in the state of New York, and discharging it on a given wharf in the port of New York, larger fees per day for the use of such wharf than are charged to a canal-boat of the same tonnage bringing a like cargo from Buffalo through the Brie canal. The same thing is true in respect to the two canal-boats, if coming to the same-wharf empty, to load with like cargoes; the one to go to Buffalo through the Brie canal, and the other to go to Baltimore through canals not in the state of New York. Boats are presumed to bring or take cargoes, and to seek wharf accommodations to discharge or receive cargoes. The increased wharfage rates must, presumably, be added by the carrier to the charge of carriage, and then added by the owner of the cargo to the price of the cargo, and thus become a tax to the prejudice of inter-state commerce, and the building up of the purely internal commerce of the state. The wharfage fees are not equal on two canal-boats of the same tonnage, but a discrimination is made against one of them because she does not ply from the city of New York to places situated on a canal in the state of New York, but plies to and from Baltimore through canals not in the state of New York. The state of New York authorizes the wharf owner to obstruct inter-state commerce, in the interest of commerce wholly internal to the state of New York. This view of the act of 1875 further appears by its placing in the same category *385 with “canal-boats navigating the canals of this state'’ these other vessels, “sloops employed upon the rivers of this state, and schooners exclusively employed upon the rivers of this state. ” The additional fees which the state authorizes to be exacted from other canal-boats, sloops and schooners, of equal tonnage, although called wharfage dues, cannot be regarded, in view of the decisions of the supreme court, as compensation merely for the use of the wharf, but as an expedient to accomplish, by indirection, the building up of the domestic commerce of the state of New York by means of unequal burdens on vessels not navigating the waters of this state. The present ease is no different from what it would have been if there had been no wharfage charged against canal-boats navigating the canals of this state, and wharfage dues had been exacted from other canal-boats.
The suggestion that it does not appear that what is charged the John M. Welch is more than a reasonable compensation, is met by what is said by the supreme court in the case of Guy. The power to discriminate as to the rate of wharfage, between vessels engaged in different occupations, must be exercised without conflicting with the power of congress over the subject of inter-state commerce.
The question under consideration was not passed upon in the case of The Virginia Rulon, 13 Blatchf. C. C. R. 519. The point there ruled was only that, by the terms of the act of 1875, the double rate was wharfage, and that that act created a lien for such double rate, under the circumstances there presented, which could be enforced by a suit in fern in admiralty.
Under the foregoing views, the act of 1875, and the act of 1860, as amended by the act of 1875, cannot be upheld as a valid law, in so far as it prescribes a charge for wharfage against the John M. Welch.
Inasmuch as the libel claims to charge wharfage solely under the provisions of the statute of New York, and claims a lien only in respect to the amount of wharfage claimed as authorized to be charged by that statute, and does not claim *386 any Bum as being a reasonable compensation, or any lien for a reasonable compensation, and the only evidence in the case, the agreed statement of facts, is as to the amount of wharfage due, as fixed by the statute of New York, and that statute is the act of 1875, or the act of 1860, as amended by the act of 1875, it follows, as the statute is invalid in regard to such amount, there is no valid statute fixing any rate or amount of wharfage for the John M. Welch, and the libellants have no lien, maritime or statutory, for any amount of wharfage, which they can enforce in this suit, on the pleadings and the-evidence. Although the new rate for the John M. Welch, according to the act of 1860, as amended by the act of 1875,. is invalid, the old rate for her, found in the act of 1813, as preserved by section 6 of the act of 1860, was repealed by the. operation of the enactments subsequent to the act of 1860, because the old rate was inconsistent with the new rate. The repealing clauses in the acts of 1870 and 1872 are not invalid, and they destroyed the operation of the old rates as to the-John M. Welch, even though it be held that the new rates are invalid as to her. The holding of the new rates invalid cannot have the effect to revive the old rates as to her. The old rates are repealed as to her, whether the new rates stand, as to her or not. The legislature has abolished the old rates. The court cannot re-enact them. It can only declare that the new rates cannot apply to the John M. Welch.
These considerations show that the libel must be dismissed, and that no decision need he made, in this case, as to the existence of a maritime lien for wharfage on a domestic vessel, or as to the circumstance's under which any lien for wharfage may now exist against a vessel under the statutes of New York.
The libel is dismissed, with costs to the claimants in this court and in the district court.