JOHNSON, C. J.
The plaintiff in error was convicted under an indictment .founded on the provisions of section 6942 Revised Statutes.
It charged that he was the keeper of a place of public resort, where intoxicating liquors, other than “ wine manufactured from the pure juice of the grape cultivated in this state, or beer, ale or cider,” were sold in violation of law."
It is claimed, that the foregoing exception in favor of such wine is in violation of art. 1, § 8, of the constitution of the United States, which gives to congress the exclusive power: “ To regulate commerce with foreign nations and among the several states,” &c.
In the view we take of this statute, its object is to provide against the evils resulting from the traffic in intoxicating liquors as a beverage, and is an appropriate exercise of the police power of the state against the retail traffic. It does not seek to regulate or restrain the traffic in wine or any other specific property, as an article of import or export. It simply deals with the infernal traffic, the retail traffic in intoxicating liquors.
The police power of the state to pass inspection laws, quarantine laws and health laws, as well as laws regulating or restraining internal traffic, belongs to that great mass of powers, not delegated to the federal government.
In Brown v. Maryland, 12 Wheat. 419, Marshall, C. J., speaking of the taxing power of the state, said : “ It cannot interfere with any regulation of commerce,” and he adds, “ That when the importer has acted upon the thing imported, and it has become incorporated and mixed with the mass of property in the country, it has, perhaps, lost its distinctive character, and has become subject to the taxing power of the state.”
*533 In the License Cases, 5 Howard, 574, this principle was applied to intoxicating liquors as an article of commerce.
' There the state in the exercise of the police power, sought to regulate and restrain the retail traffic therein.
Chief Justice Taney in a very lucid and able opinion, said : “ Every state may regulate its own internal traffic according to its own judgment and upon its own views of the interest and well-being of its citizens, and while articles imported, while in the hands of the importer for sale, in the original bale, package, or vessel, are not subject to the power of the state, yet when the original package is broken for use, or for retail, or has passed into the hands of a purchaser, it ceases to Toe an import, and becomes subject to the laws of the state.
Applying these principles to the state laws regulating the retail traffic in intoxicating liquors he said : “ These state laws act altogether upon the retail traffic within their respective borders. “ They act upon the article, after it has passed the line of foreign commerce, and becomes a part of the general mass of property in the state. These laws may indeed discourage imports and diminish the price which ardent spirits would otherwise bring.” He adds, that although the state is bound to receive and permit the sale by the importer of any article imported, “ it is not bound to furnish a market for such article, nor abstain from the passage of any law which it may deem necessary or advisable to guard the health or morals of its citizens, although such laws may discourage importations, or diminish the profits of the importer, or lessen the revenue of the general government. And if any state deems the retail traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice or debauchery, I see nothing in the constitution of the United States to prevent it from regulating and restraining the traffic or from prohibiting it altogether.”
Thus the internal retail traffic in intoxicating liquors, under the police power of the state, may be restrained, regulated or prohibited, without any infringement of the power of congress to regulate commerce. This doctrine has very recently been re-affirmed in Foster v. Kansas, decided by the supreme court *534 of the United States and found in Supreme Court Reporter, vol. 5, p. 97.
Commerce is, “ The exchange of merchandize on a large scale between different places or communities; extended trade or traffic.” Webster’s Dictionary.
In the sense used in the constitution, it is the transportation and exchange or traffic in articles or commodities between different states, or between the United States and foreign countries or with the Indian tribes.
Any state law interfering with the export or import articles of legitimate commerce or traffic between different states, or with foreign nations, is unauthorized, though a state may, by inspection, health and quarantine laws, prevent the transportation into or through jit, of articles calculated to bring into the state dangerous, infectious or contagious diseases, or articles obviously injurious to public health or welfare. Such articles are not the legitimate subjects of commerce, and no act of congress can make them so.
This exclusive power to regulate commerce, has reference to burdens or restraints imposed directly on the articles themselves, and not upon the materials of which they may be composed nor upon instruments or vehicles of commerce.
Hence, a tax upon freights, at so much per ton, imposed by a state, was a direct tax on articles of commerce (Reading R. R. Co. v. Penn., 15 Wall. 232), but a tax on the gross receipts arising from carriage of such articles was not. R. R. v. Penn., 15 Wallace, 284. Here the distinction is clearly recognized between a law taxing the specific articles of commerce, and the money earned by transporting such articles. So a tax on the gross receipts of a telegraph company, received on telegrams relating to commerce among the states, is only a tax upon an instrument of commerce, and not upon the commodities themselves. Western Union Tel. Co. v. Mayer, 28 Ohio St. 531. So a tax upon the 'capital of a merchant engaged in importing into this state merchandize from other states and from foreign countries, and selling the same by wholesale, and retail is not a regulation of commerce. Ragnet v. Wade, 4 Ohio, 107. And the exclusive right granted to a *535 patentee of a medicine to manufacture and use the same, is not infringed bj a state law prescribing certain qualifications for a practicing physician, which prevents the patentee from using the same in his practice as a physician. Jordan v. Overseers of the Poor, 4 Ohio, 294. And a tax on steamboats engaged in interstate commerce is valid. Perry v. Torrence, 8 Ohio, 521.
It is settled, that a state in the exercise of its power of taxation cannot impose burdens upon the products of other states imported into the state for sale more onerous than is imposed upon the same kind of articles produced within the state, nor discriminate against citizens engaged in selling them. Wilten v. Missouri, 91 U. S. 275; Guy v. Baltimore, 100 U. S. 434; Tiernan v. Rinker, 102 U. S. 123. These cases relate to the taxing power of the state, and not to its police power.
Tiernan v. Rinker is much .relied on in the case at bar. It related to the validity of an act by the state of Texas, regulating taxation, which provided for the levy and collection of a tax upon the occupation of selling intoxicating liquors, but excepted from such tax, “any wine or beer manufactured within this state.” Following Wilten v. Missouri, it was held that this was a discrimination in favor of domestic aud against foreign made wines, and therefore this proviso or exception was void. Here was a direct discrimination against a specific article of legitimate commerce.
The statute under consideration makes no such discrimination. Wines imported into this state are on an equality with wines made in Ohio. Wherever the article is manufactured, whether within or without the state, it is equally unlawful to sell it, contrary to the act. Wine, wherever manufactured, whether within or without the state and imported, if made of the pure juice of the grape, cultivated within this state, is excepted from the operation of the law. There is no restraint or burden placed upon the importation or sale of wines, as an article of traffic. This statute, after the wine has become a part of the general property of the state, undertakes to restrain the retail traffic therein as a beverage. This we think may bo *536 done under tbe authority conferred by the police power, without at all interfering with the freedom of transportation into the state, or a sale thereof by the importers. It is merely a regulation of the internal retail traffic in an article, which the law-making power regards as injurious, after it has become part of the mass of property in the state'.
That this law discriminates in favor of pure wine, made from the juice of grapes cultivated in this state, is clear, but it is not an interference with, or burden on commerce. In other words, it is a discrimination against adulterated wine, without regard to where it is manufactured.
In coming to this conclusion we are not unmindful of the importance and difficulty of the question, but since this act has been enforced, and has stood unchallenged, on this-ground, for near thirty years, it would require a case clear beyond controversy to authorize us now to declare it unconstitutional. If, however, we are in error in this, and .the case of Tiernan v. Rinker is sound, then the result is, that the proviso only is void, and a sale of the excepted liquors does not relieve the plaintiff in error. Had he proved on the trial that lie sold wine manufactured from the pure juice of native grapes, it would have been in violation of the valid clause of the statute.
The proviso being void and the other provisions being valid, he would have been found guilty, though he dealt only in the excepted liquors.

Judgment affirmed.