## NOTE.

At the same time with the preceding case was decided another from the same court, much like it in general principle; the case of

### HINSON v. LOTT.

1. The principal of the preceding decision affirmed and applied to a case, where, although the *mode* of collecting the tax on the article made in the State was different from the mode of collecting the tax on the articles brought from another State into it, yet the amount paid was, in fact, the same on the same article in whatever State made.

2. The effect of the act being such as just described, it was held to institute no legislation which discriminated against the products of sister States, but merely to subject them to the same rate of taxation which similar articles paid that were manufactured within the State; and accordingly that it was not an attempt to regulate commerce, but an appropriate and legitimate exercise of the taxing power of the States.

THE case was this: With the same provisions of the Constitution as are quoted in the last case in force (*supra*, p. 123) the State of Alabama passed a statute, approved February 22d, 1866, which, by its 13th section, enacted:

"Before it shall be lawful for any dealer or dealers in spirituous liquors to offer any such liquors for sale within the limits of this State, such dealer or dealers *introducing any such liquors into the State for sale* shall first pay the tax-collector of the county into which such liquors are introduced, a tax of *fifty cents per gallon upon each and every gallon thereof.*"

Two subsequent sections, the 14th and 15th, provided the mode of enforcing the collection of the tax thus imposed.

Previous sections of the statute, it ought to be mentioned, laid a tax of fifty cents per gallon on all whiskey and all brandy from fruits *manufactured in the State*, and in order to collect this tax, enacted that every distiller should take out a license and make regular returns of the amount of distilled spirits manufactured by him. On this he was to pay the fifty cents per gallon.

With this statute in force, Hinson, a merchant of Mobile, filed a bill against the tax-collector for the city of Mobile, and State of Alabama, in which he set forth that he had

on hand five barrels of whiskey consigned to him by one Dexter, of the State of Ohio, to be sold on account of the latter in the State of Alabama, and that he had five other barrels, purchased by himself in the State of Louisiana, and that he had brandy and wine imported from abroad (upon which he had paid the import duties laid by the United States, at the custom-house at Mobile), all of which liquors he now held and was offering for sale in the same packages in which they were imported, and not otherwise; that the tax-collector was about to enforce the collection of State and county taxes on the said liquors, for which he set up the authority of the 13th, 14th and 15th sections of the already quoted act-of the Alabama legislature. Hinson insisted that this act was void as being in conflict with the Constitution of the United States, and prayed an injunction. The defendant demurred.

On final hearing, in the Supreme Court of Alabama, that court gave an elaborate opinion. Referring to the clause of the Constitution, which says, that "Congress shall have power to regulate commerce with foreign nations and among the several States," it admitted that opinions were to be found in the reports of the Federal courts that the power was exclusive; but that the better opinions were otherwise; and while, if Congress exercised this power, all conflicting legislation would give way, yet, subject to the superior power in Congress, the States might legislate. It proceeded:

"There is no act of Congress with which a State tax upon liquor, introduced from other States, can interfere, and, therefore, it is permissible for the State to impose a tax upon the sale of liquor introduced from another State. Such a tax is not only constitutional, but it is obviously just and proper, for a tax to the same extent is imposed upon liquor manufactured in the State.

"It is admitted that the law under consideration is broad enough to apply to liquors imported from foreign countries, but it is void only so far as it is in collision with the acts of Congress on that subject."

Accordingly, the relief prayed was granted as to all but the State tax, and relief as to that was granted as to goods

imported from abroad, but the State tax of fifty cents per gallon on the whiskey of Dexter, of Ohio, and that purchased by plaintiff in Louisiana was held to be valid.

The case was now here for review. And *was argued (like the last one, though being after it, less fully) by Mr. J. A. Campbell, for the plaintiff in error; and by Mr. P. Phillips, contra:* little reference being made to other sections of the statute than the 13th.

*Mr. Campbell* contended that this 13th section of the act in question was a plain violation of the Constitution; as well of that provision of it which says that " no State shall levy any imposts on imports," as of that other which declares " that the citizens of each State shall be entitled to all the immunities and privileges of citizens of the several States." Moreover, the State act regulated inter-state commerce.

Mr. Justice MILLER delivered the opinion of the court.

In the argument of this case no reference has been made to any other section than the 13th of the statute in question.

If this section stood alone in the legislation of Alabama on the subject of taxing liquors, the effect of it would be that all such liquors brought into the State from other States and offered for sale, whether in the original casks by which they came into the State or by retail in smaller quantities, would be subject to a heavy tax, while the same class of liquors manufactured in the State would escape the tax. It is obvious that the right to impose any such discriminating tax, if it exist at all, cannot be limited in amount, and that a tax under the same authority can as readily be laid which would amount to an absolute prohibition to sell liquors introduced from without while the privilege would remain unobstructed in regard to articles made in the State. If this can be done in reference to liquors, it can be done with reference to all the products of a sister State, and in this mode one State can establish a complete system of non-intercourse in her commercial relations with all the other States of the Union.

We have decided, in the case of *Woodruff* v. *Parham,* im-

mediately preceding, that the constitutional provision against taxing imports by the States does not extend to articles brought from a sister State. But if this were otherwise, and we could hold that as to such articles the rule laid down in *Brown* v. *Maryland*, concerning foreign imports, applied, it would prevent but a very little of the evil which we have described; for, under the decision in that case, it is only while the goods so imported were held in the original unbroken condition in which they came into the State, and in the hands of the first importer, that they would be protected from State taxation. As soon as they passed out of his hands into use, or were offered for sale among the community at large, they would be liable to a tax which might render their use or sale impossible.

But while the case has been argued here with a principal reference to the supposed prohibition against taxing imports, it is to be seen from the opinion of the Supreme Court of Alabama delivered in this case, that the clause of the Constitution which gives to Congress the right to regulate commerce among the States, was supposed to present a serious objection to the validity of the Alabama statute. Nor can it be doubted that a tax which so seriously affects the interchange of commodities between the States as to essentially impede or seriously interfere with it, is a regulation of commerce. And it is also true, as conceded in that opinion, that Congress has the same right to regulate commerce among the States that it has to regulate commerce with foreign nations, and that whenever it exercises that power, all conflicting State laws must give way, and that if Congress had made any regulation covering the matter in question we need inquire no further.

That court seems to have relieved itself of the objection by holding that the tax imposed by the State of Alabama was an exercise of the concurrent right of regulating commerce remaining with the States until some regulation on the subject had been made by Congress. But, assuming the tax to be, as we have supposed, a discriminating tax, levied exclusively upon the products of sister States; and

looking to the consequences which the exercise of this power may produce if it be once conceded, amounting, as we have seen, to a total abolition of all commercial intercourse between the States, under the cloak of the taxing power, we are not prepared to admit that a State can exercise such a power, though Congress may have failed to act on the subject in any manner whatever.

The question of the nature of the power to regulate commerce and how far that power is exclusively vested in Congress, has always been a difficult one, and has seldom been construed in this court with unanimity. In the very latest case on this subject, *Crandall* v. *Nevada*,* the Chief Justice and Mr. Justice Clifford held that a tax on persons passing through the State by railroads or other public conveyances was forbidden to the States by that provision of the Constitution *proprio vigore*, and in the absence of any legislation by Congress on the subject; while a majority of the court, preferring to place the invalidity of the tax on other grounds, merely expressed their inability, on a review of the cases previously decided, to take that view of the question. But in that case the opinion of the court in *Cooley* v. *The Port Wardens* was approved, which holds that there is a class of legislation of a general nature, affecting the commercial interests of all the States, which, from its essential character, is National, and which must, so far as it affects these interests, belong exclusively to the Federal government.

The tax in the case before us, if it were of the character we have suggested, discriminating adversely to the products of all the other States in favor of those of Alabama, and involving a principle which might lead to actual commercial non-intercourse, would, in our opinion, belong to that class of legislation and be forbidden by the clause of the Constitution just mentioned.

But a careful examination of that statute shows that it is not obnoxious to this objection. A tax is imposed by the previous sections of the same act of fifty cents per gallon on

---

* 6 Wallace, 35.

all whiskey and all brandy from fruits manufactured in the State. In order to collect this tax, every distiller is compelled to take out a license and to make regular returns of the amount of distilled spirits manufactured by him. On this he pays fifty cents per gallon. So that when we come in the light of these earlier sections of the act, to examine the 13th, 14th, and 15th sections, it is found that no greater tax is laid on liquors brought into the State than on those manufactured within it. And it is clear that whereas collecting the tax of the distiller was supposed to be the most expedient mode of securing its payment, as to liquors manufactured within the State, the tax on those who sold liquors brought in from other States was only the complementary provision necessary to make the tax equal on all liquors sold in the State. As the effect of the act is such as we have described, and it institutes no legislation which discriminates against the products of sister States, but merely subjects them to the same rate of taxation which similar articles pay that are manufactured within the State, we do not see in it an attempt to regulate commerce, but an appropriate and legitimate exercise of the taxing power of the States.

DECREE AFFIRMED.

Mr. Justice NELSON dissented. See his opinion in the preceding case, *supra*, p. 140.