## GUY *v.* BALTIMORE.

1. A State cannot, in the exercise of her taxing power, impose upon the products of another State, brought within her limits for sale or use, a more onerous burden or tax than upon like products of her own territory, nor discriminate against a citizen by reason of his being engaged in thus bringing or in selling them.
2. An ordinance of Baltimore, whereunder vessels laden with the products of other States, are required to pay for the use of the public wharves of that city, fees which are not exacted from vessels landing thereat with the products of Maryland, is in conflict with the Constitution of the United States.
3. Such fees, so exacted, must be regarded not as a compensation for the use of the city's property, but as a mere expedient or device to foster the domestic commerce of Maryland by means of unequal and oppressive burdens upon the industry and business of other States.
4. So far as it may be necessary to protect the products of other States and countries from discrimination by reason of their foreign origin, the power of the national government over commerce with foreign nations and among the several States reaches the interior of every State of the Union.

ERROR to the Baltimore City Court, State of Maryland.

Section 4 of an act of the General Assembly of Maryland of 1827, chapter 162, entitled " An Act to appoint State wharfingers in the city of Baltimore, and to authorize the collection of wharfage in certain cases in said city" (Maryland Code of Public Local Laws, art. 4, sect. 945), provides as follows : —

" The mayor and city council of Baltimore shall be, and they are hereby, empowered and authorized to regulate, establish, charge and collect, to the use of the said mayor and city council, such rate of wharfage as they may think reasonable, of and from all vessels resorting to or lying at, landing, depositing, or transporting goods or articles other than the productions of this State, on any wharf or wharves belonging to said mayor and city council, or any public wharf in the said city, other than the wharves belonging to or rented by the State."

Pursuant to the authority conferred by said act, the mayor and city council, on July 27, 1858, passed an ordinance " to regulate the public wharves in the city of Baltimore," the provisions of which, as found in the thirty-third and thirty-fifth sections of art. 22 in the Baltimore City Code, are as follows : —

"Sect. 33. All goods, wares, or merchandise, landed on the public wharves from on board of any vessel or vessels lying at said wharves . . . shall pay the following rates of wharfage for each and every day the same may remain thereon . . . to be paid by the owner or consignee, or in the event of there being none, the master of the vessel, and all goods shipped from one vessel to another, one-half to be paid by the shipper, bags of coffee, ginger, pepper, or any other articles in similar bags, each one cent; bales of merchandise, . . . &c., each four cents; barrels of every description containing merchandise or otherwise, each two cents; boxes of sugar, . . . &c., each three cents; . . . grain per bushel, and all other articles sold by the bushel, other than the product of the State of Maryland, one-half cent; grindstones, each one cent;" &c., "all other goods not enumerated in the above list to pay in proportion."

"Sect. 35. All vessels resorting to or lying at, landing, depositing or transporting goods or articles other than the production of this State, on or from any wharf or wharves belonging to the mayor and city council, or any public wharf in the said city, other than the wharves belonging to or rented by the State, shall be chargeable with the wharfage as fixed by this ordinance, upon all goods or articles landed or deposited on any wharf or wharves belonging to the said mayor and city council; and the master or owner of the vessel so depositing, landing, or transporting said goods or articles, shall be responsible for the same."

The act of the General Assembly of 1860, chapter 226 (Code of Public General Laws, art. 96, sect. 18), requires potatoes to be sold in the State of Maryland "by weight, at the rate of fifty-six pounds to the bushel," under penalty of a fine of ten dollars.

Sect. 6 Revised Ordinances of 1858 (Baltimore City Code, art. 22, sect. 10) is as follows: —

"It shall not be lawful for any vessel landing or receiving cargo at any of the wharves within the limits of the city, which is required to pay wharfage on cargo or vessel to the harbor masters of the city of Baltimore, to leave the wharf where said vessel receives or discharges her cargo, without furnishing said harbor master, upon application, with his manifest or bills of lading of cargo, and paying the wharfage on the same, under a penalty of $20, to be collected, as other debts are collected, from the captain, commander, owner, or consignees of said vessels so offending."

In June, 1876, Edward T. Guy, a resident in and citizen of the county of Accomac, in the State of Virginia, arrived at the city of Baltimore with the schooner "George S. Powell," of which he was captain and part owner, laden with a cargo of potatoes raised and produced in the State of Virginia, and landed said cargo, amounting to two hundred and twenty bushels, on Pratt Street wharf, belonging to said city, not "that part of Pratt Street wharf reserved." Thereupon the harbor-master demanded of him the sum of $4.40 wharfage upon said potatoes so landed; and payment thereof being refused, the city of Baltimore brought this action of debt, to recover the penalty of $20, imposed by art. 22, sect. 10, of the city code, *supra.* The defendant appeared, and judgment for $20 penalty and costs having been rendered against him, he appealed to the Baltimore City Court, at the trial wherein he prayed the court to grant, as the law of the case, the following propositions : —

1st, That the act of the General Assembly of Maryland of 1827, c. 162, sect. 4, and the portions of the ordinances of the mayor and city council passed thereunder, which impose a special wharfage charge on extra-state grown products, are repugnant to the third clause of the eighth section of art. 1 of the Constitution of the United States, and unlawful.

2d, That the act of the General Assembly of Maryland of 1827, c. 162, sect. 4, and the portions of the ordinances of the mayor and city council passed thereunder, which impose a special wharfage charge on extra-state grown products, are repugnant to the second clause of the tenth section of art. 1 of the Constitution of the United States, and unlawful.

3d, That the act of the General Assembly of Maryland of 1827, c. 162, sect. 4, and the portions of the ordinances of the mayor and city council passed thereunder, which impose a special wharfage charge on extra-state grown products, are an infringement upon the rights, privileges, and immunities of the appellant, claimed under the first clause of the second section of art. 4 of the Constitution of the United States, and are unlawful.

The court having refused to grant said propositions and affirmed the judgment below, Guy sued out this writ of error.

*Mr. Frederick J. Brown*, for the plaintiff in error.

The act of the General Assembly of Maryland and the ordinances of the city of Baltimore, under which this action was brought, are repugnant to the Constitution of the United States, and therefore void. *Brown* v. *Maryland*, 12 Wheat. 419; *Steamship Company* v. *Port Wardens*, 6 Wall. 31; *Woodruff* v. *Parham*, 8 id. 123; *Hinson* v. *Lott*, id. 148; *Ward* v. *Maryland*, 12 id. 418; *State Tonnage Tax Cases*, id. 204; *Case of the State Freight Tax*, 15 id. 232; *Peete* v. *Morgan*, 19 id. 581; *Cannon* v. *New Orleans*, 20 id. 577; *Railroad Company* v. *Maryland*, 21 id. 456; *Welton* v. *State of Missouri*, 91 U. S. 275; *Henderson* v. *Mayor, &c.*, 92 id. 259; *McCready* v. *Virginia*, 94 id. 391; *Cooke* v. *Pennsylvania*, 97 id. 566; *Packet Company* v. *Keokuk*, 95 id. 80; *The Wharf Case*, 3 Bland (Md.), 361.

*Mr. James L. McLane, contra*, cited *Dugan* v. *Mayor, &c.*, 5 Gill & John. (Md.) 357; *Passenger Cases*, 7 How. 402; *Conner* v. *Elliott*, 18 id. 591; *Steamship Company* v. *Port Wardens*, 6 Wall. 31; *Woodruff* v. *Parham*, 8 id. 136; *Downham* v. *Alexandria Council*, 10 id. 173; *Marshall* v. *Vicksburg*, 15 id. 146; *Case of the State Freight Tax*, id. 277; *McCready* v. *Virginia*, 94 U. S. 391; *Packet Company* v. *Keokuk*, 95 id. 80; Cooley on Taxation, 62.

MR. JUSTICE HARLAN delivered the opinion of the court.

In *Woodruff* v. *Parham* (8 Wall. 123), we had occasion to consider the constitutional validity of an ordinance of the city of Mobile under the provisions of which had been assessed, for municipal purposes, a tax upon sales in that city of certain goods and merchandise, the product of States other than Alabama. The ordinance, in its application to articles carried into Alabama from other States, was assailed as being inconsistent with the constitutional inhibition upon the States levying imposts or duties on imports or exports — with the power of Congress to regulate commerce with foreign nations and among the several States — and with that clause which declares that the citizens of each State shall be entitled to all the immunities and privileges of citizens of the several States.

Touching the first of these propositions it was ruled that the

term import, as used in sect. 10, art. 1, of the Constitution, had reference to articles imported from foreign countries, and not to such as were brought from one of the States of the Union into another.    In the argument, *Brown* v. *Maryland* (12 Wheat. 419) was cited in support of the proposition that the whole ordinance, in its application to articles brought from other States to Mobile for sale, was an unauthorized regulation of inter-state commerce.   Upon that branch of the case, we said : " If the court there [in *Brown* v. *Maryland*] meant to say that a tax levied on goods from a sister State, which was not levied on goods of a similar character produced within the State, would be in conflict with the clause of the Constitution giving Congress the right to regulate commerce among the States, as much as the tax on foreign goods, then under consideration, was in conflict with the authority to regulate commerce with foreign nations, we agree to the proposition."

In a subsequent portion of our opinion in *Woodruff* v. *Parham*, it was said : " But we may be asked, is there no limit to the power of the States to tax the produce of other States brought within their borders?   And can they so tax them as to drive them out or altogether prevent their introduction or their transit over their territory ?   The case before us is a simple tax on sales of merchandise imposed alike upon all sales made in Mobile, whether the sales be made by a citizen of Alabama, or of another State, and whether the goods sold are the products of that State or of some other.   There is no attempt to discriminate injuriously against the products of other States, or the rights of their citizens, and the case is not, therefore, an attempt to fetter commerce among the States, or to deprive the citizens of other States of any privilege or immunity possessed by citizens of Alabama.   But a law having such operation would, in our opinion, be an infringement of the provisions of the Constitution which relate to those subjects, and, therefore, void."

In *Hinson* v. *Lott* (8 Wall. 148), we upheld a statute of Alabama, imposing taxes upon the sale of spirituous liquors within its limits, upon the ground that it did not discriminate against the products of other States, and only subjected them to the same taxation imposed upon similar articles manufactured

in that State. Had the statute been susceptible of a different construction, it would have been held to be repugnant to the Constitution.

In *Ward* v. *Maryland* (12 id. 418), we examined the provisions of a statute of Maryland which, among other things, required of persons, not permanent residents of that State, before selling or offering for sale within the limits of the city of Baltimore, any goods, wares, or merchandise whatever, other than agricultural products and articles manufactured in that State, to obtain a license therefor. The amount exacted for such license was larger than the statute required of resident traders engaged in like business. In declaring the statute to be repugnant to the Federal Constitution, we said that, " inasmuch as the Constitution provides that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States, it follows that the defendant might lawfully sell or offer or expose to sale, within the district described in the indictment, any goods which the permanent residents of the State might sell or offer or expose for sale in that district, without being subjected to any higher tax or excise than that exacted by law of such permanent residents."

Upon the same ground, in the more recent case of *Welton* v. *State of Missouri* (91 U. S. 275), we held void a statute of Missouri imposing a peddler's license-tax upon persons going from place to place to sell patent and other medicines, goods, wares, or merchandise, except books, charts, maps, and stationery, not the growth, product, or manufacture of that State, and which did not impose a like tax upon the sale of similar articles, the growth, product, or manufacture of Missouri.

In view of these and other decisions of this court, it must be regarded as settled that no State can, consistently with the Federal Constitution, impose upon the products of other States, brought therein for sale or use, or upon citizens because engaged in the sale therein, or the transportation thereto, of the products of other States, more onerous public burdens or taxes than it imposes upon the like products of its own territory.

If this were not so, it is easy to perceive how the power of Congress to regulate commerce with foreign nations and among the several States could be practically annulled, and the equality

of commercial privileges secured by the Federal Constitution to citizens of the several States be materially abridged and impaired. "Over whatever other interests of the country," said Mr. Webster, "this government may diffuse its benefits and blessings, it will always be true, as matter of historical fact, that it had its immediate origin in the necessities of commerce; and for its immediate object, the relief of those necessities, by removing their causes, and by establishing a uniform and steady system." But State legislation such as that indicated in the cases which have been cited, if maintained by this court, would ultimately bring our commerce to that "oppressed and degraded state," existing at the adoption of the present Constitution, when the helpless, inadequate Confederation was abandoned and a national government instituted, with full power over the entire subject of commerce, except that wholly internal to the States composing the Union.

How far the principles enunciated in the foregoing cases control the determination of the one before us, we now proceed to inquire.

By an act of the General Assembly of Maryland, passed in 1827, authority was given to the mayor and city council of Baltimore to regulate, establish, charge, and collect to their use such rate of wharfage as they might think reasonable, of and from all vessels resorting to or lying at, landing, depositing, or transporting goods or articles, *other than the products of that State*, on any wharf or wharves belonging to that municipal corporation, or any public wharf in the city other than the wharves belonging to or rented by the State, and that part of Pratt Street wharf, theretofore reserved for the use of the citizens of that State. Maryland Code of Public Local Laws, art. 4, sect. 945.

In pursuance of that act the city, by its constituted authorities, in the year 1858, passed an act regulating the public wharves. By its thirty-third section it is declared that all goods, wares, or merchandise landed on the public wharves from on board any vessels lying at said wharves, or placed thereon for the purpose of shipment or exposure for sale, *other than the product of the State of Maryland*, shall pay wharfage according to certain rates therein prescribed. The thirty-fifth

section declares that "all vessels belonging to or lying at, land ing, depositing, or transporting goods or articles *other than the production of this State*, on or from any wharf or wharves belonging to the mayor and city council, or any public wharf in the said city, other than the wharves belonging to or rented by the State, shall be chargeable with the wharfage as fixed by this ordinance, upon all goods or articles landed or deposited on any wharf or wharves belonging to the said mayor and city council; and the master or owner of the vessel so depositing, landing, or transporting said goods or articles, shall be responsible for the same." The ordinance contained other sections providing for its enforcement.

The appellant Guy, a resident citizen of Accomac County, Virginia, was engaged in the year 1876 in sailing a schooner, of which he was master and part-owner, from that county to Baltimore, laden with potatoes raised in Virginia. In June of that year, he landed his vessel at one of the public wharves belonging to the city (not that part of the Pratt Street wharf reserved), and discharged therefrom two hundred and twenty barrels of potatoes. Under the authority of the foregoing statute and ordinance, the city harbor-master demanded of him the payment of $4.40 as wharfage. He refused to comply with that demand, and, being sued by the city, judgment was rendered against him in the court of a justice of the peace, which was affirmed by the City Court of Baltimore, the highest court of Maryland in which a decision of the case could have been had.

It is admitted that such wharfage dues are not and never have been assessed against parties or vessels bringing to that port potatoes or other articles grown in the State of Maryland.

The argument in support of the statute and ordinance upon which the judgment below rests is that the city, by virtue of its ownership of the wharves in question, has the right, in its discretion, to permit their use to all vessels landing thereat with the products of Maryland; and that those operating vessels, laden with the products of other States, cannot justly complain, so long as they are not required to pay wharfage fees in excess of reasonable compensation for the use of the city's property.

This proposition, however ingenious or plausible, is unsound both upon principle and authority. The municipal corporation of Baltimore was created by the State of Maryland to promote the public interests and the public convenience. The wharf at which appellant landed his vessel was long ago dedicated to public use. The public for whose benefit it was acquired, or who are entitled to participate in its use, are not alone those who may engage in the transportation to the port of Baltimore of the products of Maryland. It embraces, necessarily, all engaged in trade and commerce upon the public navigable waters of the United States. Every vessel employed in such trade and commerce may traverse those waters without let or hinderance from local or State authority; and the national Constitution secures to all, so employed, without reference to the residence or citizenship of the owners, the privilege of landing at the port of Baltimore with any cargo whatever, not excluded therefrom by, or under the authority of, some statute in Maryland enacted in the exertion of its police powers. The State, it will be admitted, could not lawfully impose upon such cargo any direct public burden or tax because it may consist, in whole or in part, of the products of other States. The concession of such a power to the States would render wholly nugatory all national control of commerce among the States, and place the trade and business of the country at the mercy of local regulations, having for their object to secure exclusive benefits to the citizens and products of particular States. But it is claimed that a State may empower one of its political agencies, a mere municipal corporation representing a portion of its civil power, to burden inter-state commerce by exacting from those transporting to its wharves the products of other States wharfage fees, which it does not exact from those bringing to the same wharves the products of Maryland. The city can no more do this than it or the State could discriminate against the citizens and products of other States in the use of the public streets or other public highways. The city of Baltimore, if it chooses, can permit the public wharves, which it owns, to be used without charge. Under the authority of the State, it may also exact wharfage fees, equally, from all who use its improved wharves, provided such charges do not exceed

what is fair remuneration for the use of its property. *Packet Company* v. *St. Louis*, supra, p. 423 ; *Vicksburg* v. *Tobin*, supra, p. 430 ; *Packet Company* v. *Keokuk*, 95 U. S. 80. But it cannot employ the property it thus holds for public use so as to hinder, obstruct, or burden inter-state commerce in the interest of commerce wholly internal to that State. The fees which it exacts to that end, although denominated wharfage dues, cannot be regarded, in the sense of our former decisions, as compensation merely for the use of the city's property, but as a mere expedient or device to accomplish, by indirection, what the State could not accomplish by a direct tax, viz., build up its domestic commerce by means of unequal and oppressive burdens upon the industry and business of other States.

Such exactions, in the name of wharfage, must be regarded as taxation upon inter-state commerce. Municipal corporations, owning wharves upon the public navigable waters of the United States, and *quasi* public corporations transporting the products of the country, cannot be permitted by discriminations of that character to impede commercial intercourse and traffic among the several States and with foreign nations.

In the exercise of its police powers, a State may exclude from its territory, or prohibit the sale therein of any articles which, in its judgment, fairly exercised, are prejudicial to the health or which would endanger the lives or property of its people. But if the State, under the guise of exerting its police powers, should make such exclusion or prohibition applicable solely to articles, of that kind, that may be produced or manufactured in other States, the courts would find no difficulty in holding such legislation to be in conflict with the Constitution of the United States.

The power of the national government over commerce with foreign nations and among the several States is broad and comprehensive. It reaches the interior of every State of the Union, so far as it may be necessary to protect the products of other States and countries from discrimination by reason of their foreign origin. *Brown* v. *Maryland*, 12 Wheat. 419.

Nothing can be clearer than that the statute of Maryland and the ordinance of the city of Baltimore, in the respects

adverted to, are in conflict with the power of Congress over the subject of commerce.

The judgment is reversed, with directions to dismiss the action against the appellant, with his costs against the city.

*So ordered.*

Mr. Chief Justice Waite dissenting.

I cannot concur in this judgment. We have decided that a municipal corporation may collect reasonable compensation for the use of its improved public wharves and landing-places. Such a charge is in no just sense a tax or burden. The State of Maryland has seen fit to prohibit the city of Baltimore from making any such charge for landing and depositing the products of the State. That was all the State undertook to do. I am unable to bring my mind to the conclusion that the Constitution of the United States makes this the equivalent of a provision that all wharfage at the public wharves belonging to the city shall be free so long as the law as it now stands is in force.