## SONNEBORN BROTHERS *v.* CURETON, ATTORNEY GENERAL OF THE STATE OF TEXAS, ET AL.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS.

No. 20.  Argued March 24, 1922; restored to docket for reargument May 29, 1922; reargued October 5, 1922.—Decided June 11, 1923.

1. A state occupation tax, levied on all wholesale dealers in oil and measured by a per cent. of the gross amount of their respective sales made within the State, is not invalid, as a burden on interstate commerce, when applied to local sales in the original packages, of oil previously shipped into the State and stored by the dealer as part of his stock in trade.  P. 508.
2. As regards immunity from state taxation, the distinction between imports and articles in original packages in interstate commerce, is that, in the one case, the immunity attaches to the import itself before sale, while, in the other, it depends on whether the tax regulates or burdens interstate commerce.  P. 509.

*Woodruff* v. *Parham,* 8 Wall. 123, followed. *Standard Oil Co.* v. *Graves,* 249 U. S. 389; *Askren* v. *Continental Oil Co.,* 252 U. S. 444; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, and *Texas Co.* v. *Brown,* 258 U. S. 466, qualified
Affirmed.

APPEAL from a decree of the District Court dismissing, on final hearing, the appellants' bill, which sought to enjoin the enforcement of penalties for failure to make reports of sales of oil and for failure to pay a state tax, in respect

of oil sold in the packages in which it had been originally shipped into the State.

*Mr. Joseph Manson McCormick,* with whom *Mr. Francis Marion Etheridge* was on the briefs, for appellants.

*Mr. E. F. Smith,* with whom *Mr. C. M. Cureton,* Attorney General of the State of Texas, and *Mr. C. W. Taylor* were on the brief, for appellees.

Mr. Chief Justice Taft delivered the opinion of the Court.

This is an appeal from a decree of a United States District Court under § 238, Judicial Code, in a case in which a law of Texas is claimed to be in contravention of the Constitution of the United States. The law in question is Art. 7377 of the Revised Civil Statutes of Texas, approved May 16, 1907, Acts of 1907, p. 479. It provides that every individual, firm or corporation, foreign or domestic, engaging as a wholesale dealer in coal oil or other oils refined from petroleum, shall make a quarterly report to the State Comptroller, showing the gross amount collected and uncollected from any and all sales made within the State during the quarter next preceding, and that an occupation tax shall be paid by such dealer equal to two per cent. of the gross amount of such sales collected or uncollected.

From an agreed statement of facts, the following appears:

Sonneborn Brothers is a firm of non-resident merchants selling petroleum products, with its principal place of business in New York City. In January, 1910, it opened an office in Dallas, Texas, and since that time has maintained it and connecting warerooms and has rented space in a public warehouse at San Antonio, Texas. From January, 1910, until April 11, 1919, receipts from its total

sales, made through orders received at the Dallas office, have amounted to $860,801.50. This sum included:

(1) Those from the sale of oil which, when sold, was not in Texas.

(2) Those from sales of oil to be delivered from Texas out of the State.

(3) Those arising from the sale of oil shipped into Texas and afterwards sold from the storerooms in unbroken original packages.

(4) Those from sales in Texas from broken packages.

The receipts from the first two classes amounted to $643,622.40 and the state authorities made no effort to tax them. The receipts from (4) amounted in the period named to $16,549.84, and appellants do not deny their liability for the tax thereon. The sales made under (3) of unbroken packages, after their arrival in Texas, and after storage in the warerooms or warehouse of appellants, amounted to $217,179.10, and the tax on this amounting to $4,674.58 is the subject of the contest here.

The question we have to decide is whether oil transported by appellants from New York or elsewhere outside of Texas to their warerooms or warehouse in Texas, there held for sales in Texas in original packages of transportation, and subsequently sold and delivered in Texas in such original packages, may be made the basis of an occupation tax upon appellants, when the state tax applies to all wholesale dealers in oil engaged in making sales and delivery in Texas.

Our conclusion must depend on the answer to the question: Is this a regulation of, or a burden upon, interstate commerce? We think it is neither. The oil had come to a state of rest in the warehouse of the appellants and had become a part of their stock with which they proposed to do business as wholesale dealers in the State. The interstate transportation was at an end, and whether in the original packages or not, a state tax upon the oil

as property or upon its sale in the State, if the state law levied the same tax on all oil or all sales of it, without regard to origin, would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject.

This has been established so far as property taxes on the merchandise are concerned by a formidable line of authorities. *Brown* v. *Houston,* 114 U. S. 622; *Coe* v. *Errol,* 116 U. S. 517; *Pittsburg & Southern Coal Co.* v. *Bates,* 156 U. S. 577; *Diamond Match Co.* v. *Ontonagon,* 188 U. S. 82; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 520; *General Oil Co.* v. *Crain,* 209 U. S. 211; *Bacon* v. *Illinois,* 227 U. S. 504.

But the argument is that for articles in original packages, the sale is a final step in the interstate commerce, and that the owner may not be taxed upon such sale because this is a direct burden on that step. The reasoning is based on the supposed analogy of the immunity from state taxation of imports from foreign countries which lasts until the article imported has been sold, or has been taken from its original packages of importation and added to the mass of merchandise of the State. This immunity of imports was established by this Court in *Brown* v. *Maryland,* 12 Wheat. 419, 446, 447, and was declared in obedience to the prohibition of the Constitution contained in § 10, Article I, par. 2, providing that:

"No State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

The holding was that the sale was part of the importation. It is the article itself to which the immunity attaches and whether it is in transit or is at rest, so long as it is in the form and package in which imported and in the custody and ownership of the importer, the State may not tax it. This immunity has been enforced as against

a license or occupation tax on the importer in *Brown* v. *Maryland*, 12 Wheat. 419, as against a personal property tax on a stock of wines of a wine dealer to the extent to which the stock included imported wines in the original packages, *Low* v. *Austin*, 13 Wall. 29, and as against an occupation tax on an auctioneer measured by his commissions on the sales of such imports, *Cook* v. *Pennsylvania*, 97 U. S. 566. When, however, the article imported is sold or is taken from the original packages and exposed for sale, the immunity is gone. *Waring* v. *The Mayor*, 8 Wall. 110; *May* v. *New Orleans*, 178 U. S. 496.

Cases subsequent to *Brown* v. *Maryland* show that the analogy between imports and articles in original packages in interstate commerce in respect of immunity from taxation fails. The distinction is that the immunity attaches to the import itself before sale, while the immunity in case of an article because of its relation to interstate commerce depends on the question whether the tax challenged regulates or burdens interstate commerce.

The first of the cases making this distinction is *Woodruff* v. *Parham*, 8 Wall. 123. In that case, Woodruff, an auctioneer in Mobile, received, in the course of his general business for himself and as consignee and agent for others, merchandise from Alabama and from other States and sold it in unbroken packages. The City of Mobile under its charter levied a uniform tax on real and personal property, on sales at auction, on sales of merchandise, and on capital employed in the business in the city. Woodruff objected to paying any tax on the auction sales of merchandise from other States in original packages. The question most considered by the Court was whether merchandise exported from one State to another was an export which a State was forbidden to tax by Article I, § 10, par. 2, of the Federal Constitution, above quoted. It was held that it was not, and that the words "imports and exports" as there used referred to, and included only mer-

chandise brought in from, or transported to, foreign countries. The Court (p. 140) further held that such a tax which did not discriminate against the sales of goods from other States, but was imposed upon sales of all merchandise, whether its origin was in Alabama or in any other State, was not " an attempt to fetter commerce among the States."

At the close of the opinion in *Brown* v. *Maryland,* Chief Justice Marshall made the remark " that we suppose the principles laid down in this case apply equally to importations from a sister State." This was pronounced in *Woodruff* v. *Parham* not to be a judicial decision of the question but an *obiter dictum.*

While the opinion by Mr. Justice Miller in *Woodruff* v. *Parham* is chiefly devoted to showing that exports are limited to goods sent out of the country, the decision on the interstate commerce phase of the issue was most fully considered. The adverse view was pressed with all the learning and force of argument of John A. Campbell, formerly a Justice of this Court.

Immediately following *Woodruff* v. *Parham* is *Hinson* v. *Lott,* 8 Wall. 148, in which was at issue the validity of a provision of the Alabama law that before it should be lawful for a dealer introducing spirituous liquors into the State to offer the same for sale, he must pay fifty cents a gallon thereon. The provision was sustained as not being an attempt to burden interstate commerce, because by another section of the same law every distiller of the State was required to pay fifty cents a gallon on all liquor made by him, and the two sections were complementary in order " to make the tax equal on all liquors sold in the State."

*Woodruff* v. *Parham* was affirmed and applied in *Brown* v. *Houston,* 114 U. S. 622, where coal mined in Pennsylvania and sent in barges to New Orleans to be sold after arrival from those barges, without being landed, to a

vessel bound to a foreign port was held while awaiting sale to be subject to taxation by the State as property in Louisiana.

The case of *Woodruff* v. *Parham* has never been overruled but has often been approved and followed as the cases above cited show. As an authority it controls the case before us and shows conclusively that the tax in question is valid.

The distinction between the immunity from state taxation of imports in original packages, and that of articles coming from interstate commerce in original packages, is again brought out with emphasis by Mr. Justice White, afterwards Chief Justice, in *American Steel & Wire Co.* v. *Speed,* 192 U. S. 522. In that case, articles of hardware were shipped by the American Steel & Wire Company from their factories in the East to Memphis, Tennessee, and there kept in store in original packages to be distributed to Arkansas and other States when sold, on orders to be subsequently secured. Memphis, under a general law, imposed a merchant's tax on the Wire Company, based on the average capital invested in the business and included this stock of original packages in the average. The Court conceded that if these goods were "imports," they could not be taxed under *Brown* v. *Maryland,* but said (p. 519):

" But the goods not having been brought from abroad, they were not imported in the legal sense and were subject to state taxation after they had reached their destination and whilst held in the State for sale," and cited the cases of *Woodruff* v. *Parham,* and *Brown* v. *Houston.* Speaking of these cases, the Justice said:

" Those two cases, decided, the one more than thirty-five and the other more than eighteen years ago, are decisive of every contention urged on this record depending on the import and the commerce clause of the Constitution of the United States. The doctrine which the two

cases announced has never since been questioned. It has become the basis of taxing power exerted for years, by all the States of the Union."

Support for the contention that a state tax on sales of merchandise in original packages brought in from another State is to be distinguished from *ad valorem* taxes on the merchandise itself is supposed to be found in the cases of *Leisy* v. *Hardin,* 135 U. S. 100, and *Lyng* v. *Michigan,* 135 U. S. 161. In those cases it was held that a law of a State which forbade sales of merchandise brought into the State from another State and subjected it to forfeiture, was invalid because freedom to sell was part of interstate commerce and interference with such freedom was an obstruction and would be so regarded as long as the merchandise was unsold and in an original package. The reasoning in *Brown* v. *Maryland* as to the necessity of sale to complete importation was resorted to by the Court in *Leisy* v. *Hardin* to sustain the view that a sale was a part of interstate commerce and any state action which intercepted the merchandise brought in before sale in the original package was void. In drawing the proper line between the valid operation of state prohibition laws and lawful interstate commerce, Chief Justice Marshall's conception of that to be drawn between importation from abroad under the Constitution and state taxation was adopted. Without questioning the reasoning used to reach the conclusion in *Leisy* v. *Hardin,* it is enough to point out the radical difference between state legislation preventing any sale at all accompanied by forfeiture of the merchandise, and a provision for an occupation tax applicable to all sales of such merchandise whether domestic or brought from another State. The one plainly interferes with or destroys the commerce, the other merely puts the merchandise on an equality with all other merchandise in the State and constitutes no real hindrance to introducing the merchandise into the State for sale

upon the basis of equal competition. Mr. Justice White in his opinion in *American Steel & Wire Co.* v. *Speed,* thus distinguished *Leisy* v. *Hardin* from the case then before the Court. The obstruction to interstate commerce in *Leisy* v. *Hardin* was like that in *Schollenberger* v. *Pennsylvania,* 171 U. S. 1, 12, in *Railroad Co.* v. *Husen,* 95 U. S. 465, 469, in *Minnesota* v. *Barber,* 136 U. S. 313, in *Brimmer* v. *Rebman,* 138 U. S. 78, in *Scott* v. *Donald,* 165 U. S. 58, 97, in *Vance* v. *Vandercook Co., No. 1,* 170 U. S. 438, and in *American Express Co.* v. *Iowa,* 196 U. S. 133.

Counsel for the appellants cite the case of *Dahnke-Walker Milling Co.* v. *Bondurant,* 257 U. S. 282, 290, as aiding their argument that a tax on a sale of merchandise in an original package brought from another State is a tax on interstate commerce and is different from an *ad valorem* property tax on the merchandise. But that case was not concerned with the power to tax, but rather with the power of a State to prevent an engagement in interstate commerce within her limits, except by her leave. The holding there was that a contract for the purchase of a crop of grain in Kentucky to be delivered at a railway station in Kentucky for shipment to Tennessee, conformably to a settled course of business, was an interstate contract which a corporation not authorized by Kentucky to do business in that State might nevertheless make and enforce without incurring the penalty of the state law. It was said in that case (p. 290) that,

" Where goods in one State are transported into another for purposes of sale, the commerce does not end with the transportation, but embraces as well the sale of goods after they reach their destination and while they are in the original packages. *Brown* v. *Maryland,* 12 Wheat. 419, 446–447; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 519. On the same principle, where goods are purchased in one State for transportation to another, the

commerce includes the purchase quite as much as it does the transportation. *American Express Co.* v. *Iowa*, 196 U. S. 133, 143."

But this language has no relevancy to show that a tax without discrimination on goods after the transportation ceases, is a burden on interstate commerce, a proposition negatived in the *American Steel & Wire Co. Case* it cites, or that a different rule should apply to an *ad valorem* property tax from that in case of a tax on sales.

Many of the sales by the appellants were made by them before the oil to fulfill the sales was sent to Texas. These were properly treated by the state authorities as exempt from state taxation. They were in effect contracts for the sale and delivery of the oil across state lines. The soliciting of orders for such sales is equally exempt. Such transactions are interstate commerce in its essence and any state tax upon it is a regulation of it and a burden upon it. *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Asher* v. *Texas*, 128 U. S. 129; *Stoutenburgh* v. *Hennick*, 129 U. S. 141, 147; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Brennan* v. *Titusville*, 153 U. S. 289; *Dozier* v. *Alabama*, 218 U. S. 124; *Crenshaw* v. *Arkansas*, 227 U. S. 389; *Stewart* v. *Michigan*, 232 U. S. 665; *Western Oil Refining Co.* v. *Lipscomb*, 244 U. S. 346.

So too a tax upon the gross receipts from interstate transportation or transmission, whether receipts from intrastate transportation or transmission are equally taxed or not, is an unlawful tax because a direct burden upon interstate commerce. *State Freight Tax*, 15 Wall. 232, 276, 277; *Fargo* v. *Michigan*, 121 U. S. 230, 244; *Philadelphia & Southern S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, 336; *Leloup* v. *Port of Mobile*, 127 U. S. 640, 648; *McCall* v. *California*, 136 U. S. 104, 109; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Texas*, 210 U. S. 217, 227; *Crew Levick Co.* v. *Pennsylvania*, 245 U. S. 292.

A state tax upon merchandise brought in from another
State or upon its sales, whether in original packages or
not, after it has reached its destination and is in a state
of rest, is lawful only when the tax is not discriminating in
its incidence against the merchandise because of its origin
in another State.   This distinction is illustrated in the
difference between those cases which uphold the validity
of a tax upon peddlers engaged in selling merchandise
from out of the State which they carry with them, like
those of *Machine Co.* v. *Gage,* 100 U. S. 676, *Emert* v.
*Missouri,* 156 U. S. 296, *Baccus* v. *Louisiana,* 232 U. S. 334,
and *Wagner* v. *Covington,* 251 U. S. 95, on the one hand,
and that of *Welton* v. *Missouri,* 91 U. S. 275, in which a
peddler's tax was held bad because it was levied only on
goods from other States, on the other.   *Ward* v. *Maryland,*
12 Wall. 418, 429, *Guy* v. *Baltimore,* 100 U. S. 434, 442–
443, *Tiernan* v. *Rinker,* 102 U. S. 123, *Webber* v. *Virginia,*
103 U. S. 344, 350, and *Walling* v. *Michigan,* 116 U. S.
446, are other instances showing the invalidity of state
tax laws discriminating against merchandise brought in
from other States.

Appellants' chief argument to sustain their contention
that a sale of merchandise in the original package made
after it is brought into the State from another State is
exempt from state taxation is based upon the language of
the opinions in certain recent cases in this Court.   They
are *Standard Oil Co.* v. *Graves,* 249 U. S. 389; *Askren* v.
*Continental Oil Co.,* 252 U. S. 444; *Bowman* v. *Continen-
tal Oil Co.,* 256 U. S. 642, and *Texas Co.* v. *Brown,* 258
U. S. 466.

*Standard Oil Co.* v. *Graves* was a case of excessive in-
spection fees.   The law of Washington in that case re-
quired inspection and labelling before sale, and punished
sales without them.   The Supreme Court of the State
said the law could be sustained as an excise law on selling
oil in the State.   The opinion contains this passage:

" In this case the amended complaint alleges that the oils were shipped into Washington from California. They are brought there for sale. This right of sale as to such importations is protected to the importer by the Federal Constitution, certainly while the same are in the original receptacles or containers in which they are brought into the State."

The Court said finally:

" We reach the conclusion that the statute imposing these excessive inspection fees, in the manner stated, upon all sales of oils brought into the State in interstate commerce necessarily imposes a direct burden upon such commerce, and is, therefore, violative of the commerce clause of the Federal Constitution."

There is nothing in the statement of the case to show the details of the importations of oil, and nothing to indicate how much, if any, of the oil imported had been ordered before shipment into the State or how much sold after importation. The remark of the Court as to original receptacles or containers, therefore, is not shown to have been necessary to the conclusion.

The case of *Askren* v. *Continental Oil Co.* involved the validity of a law called an inspection law, imposing a license tax upon those selling gasoline in the State, and an excise tax of 2 cents a gallon on the sale or use of it. The inspectors' duties were to see to the execution of the act and the excess of receipts after payment of their salaries and expenses went into the road fund of the State. The case was decided on the averments of the bill which described complainant's business of two kinds, first, that of selling oil to customers in tanks, and also in barrels and packages containing not less than two 5-gallon cans, without breaking them, and, second, of selling gasoline from such tanks and cans in quantities desired by the purchaser. There was nothing to show whether the first kind of business was done on orders lodged before importation or after.

The Court, however, said:

"As to the gasoline brought into the State in the tank cars, or in the original packages, and so sold, we are unable to discover any difference in plan of importation and sale between the instant case and that before us in *Standard Oil Co.* v. *Graves,* 249 U. S. 389, in which we held that a tax, which was in effect a privilege tax, as is the one under consideration, providing for a levy of fees in excess of the cost of inspection, amounted to a direct burden on interstate commerce. In that case we reaffirmed, what had often been adjudicated heretofore in this court, that the direct and necessary effect of such legislation was to impose a burden upon interstate commerce; that under the Federal Constitution the importer of such products from another State into his own State for sale in the original packages, had a right to sell the same in such packages without being taxed for the privilege by taxation of the sort here involved."

If the orders for such sales in original packages were given before importation, the conclusion reached by the Court that they were protected against an excise or license tax is in accord with all of the cases already cited, though the fact that they were delivered in the original packages would not give them any additional immunity. It should be noted that in this opinion, the case of *Wagner* v. *Covington,* 251 U. S. 95, is quoted approvingly and followed although in that case a tax was upheld on merchandise brought in from Ohio by the seller and sold there in the original packages. In the absence of specification as to when ordered, we can not be sure that the case was wrongly decided, but only that the language used contained implications which can not be sustained.

The case of *Bowman* v. *Continental Oil Co.* was the same case as the *Askren Case,* the representatives of the State having changed. The *Askren Case* had come here on an appeal from an interlocutory injunction and was

decided on the averments of the bill. When the case
went back, an answer was filed and the case was heard
and it turned out that only five per cent. of the busi-
ness was in tank cars and unbroken packages sold,
and that 95 per cent. was in sales of gasoline in quan-
tities desired. The main point decided in the *Bow-
man Case* was that a license tax law which imposed a
lump tax as a condition of doing business, part of which
it was unlawful under the Federal Constitution to tax,
must be declared void, though the other part of the busi-
ness might have been properly the subject of such a tax.
As to the excise tax, the Court directed the injunction to
issue with respect to the imposition upon "sales of gaso-
line brought from without the State into the State of
New Mexico, and there sold and delivered to customers
in the original packages, whether tank cars, barrels, or
other packages, and in the same form and condition as
when received by plaintiff in that State." If this cov-
ered gasoline that was ordered by the purchaser before
importation, it was right. If it covered gasoline, whether
in original packages or not, which was sold after it reached
its destination, then it is not in accord with the law as
we understand it to be under the authorities we have
cited. There is nothing in the case as disclosed in the
statements of facts either in the *Askren* or the *Bowman
Case* to show what the fact was in this regard.

It is hardly to be supposed that the Court intended in
these cases to overrule or narrowly to distinguish the
cases of *Woodruff* v. *Parham, Hinson* v. *Lott, Brown* v.
*Houston, Pittsburg & Southern Coal Co.* v. *Bates, Ameri-
can Steel & Wire Co.* v. *Speed,* and *Wagner* v. *Covington,*
without mentioning them, especially when we find that
in *Texas Co.* v. *Brown,* 258 U. S. 466, 476, they are quoted
approvingly and followed. That case involved the ques-
tion whether an inspection law resulting in receipts
greatly in excess of the cost of inspection, and construed

by the Georgia Supreme Court to be an excise tax, was valid in its application to oil shipped into Georgia from Texas and stored in Georgia for distribution and sale. It was held to be a valid tax. The case was rightly decided; and for the right reason; but in seeking to distinguish the previous cases, the opinion uses this language:

"Appellant insists that *Standard Oil Co.* v. *Graves,* 249 U. S. 389, is inconsistent with the imposition of inspection fees on a revenue basis upon goods brought from another State, however held or disposed of in Georgia. That decision, however, extended the exemption from such fees of goods brought from State to State, no further than ' while the same are in the original receptacles or containers in which they are brought into the State ' (pp. 394–395); and so it was interpreted in *Askren* v. *Continental Oil Co.,* 252 U. S. 444, 449."

Upon full consideration and after a reargument, we can not think this extension of the exemption referred to, if intended to apply to oil sold after arrival in the State, to be justified either in reason or in previous authority, and to this extent the opinions in the cases cited are qualified.

The cases all involved the validity of statutes providing for excessive inspection fees and the question of saving the statute as an excise law applicable to part of the sales of the oil was an incidental one. The facts upon which the line between taxable and non-taxable sales could be correctly drawn do not appear fully in any of the cases, or to have been discussed by counsel. This is what has led to a confusion as to the real distinctions and to observations in the opinions which unless much restricted in their application constitute a departure from theretofore established principles.

In *Woodruff* v. *Parham* (p. 137), Mr. Justice Miller gives an illustration of the injustice which would arise if the constitutional immunity from state taxation as to

imports from abroad were to be held to apply to imports from one State to another.   It correctly describes the result if the interstate commerce clause were to afford the same immunity:

" The merchant at Chicago who buys his goods in New York and sells at wholesale in the original packages, may have his millions employed in trade for half a lifetime and escape all state, county, and city taxes; for all that he is worth is invested in goods which he claims to be protected as imports from New York.   Neither the State nor the city which protects his life and property can make him contribute a dollar to support its government, improve its thoroughfares or educate its children.   The merchant in a town in Massachusetts, who deals only in wholesale, if he purchase his goods in New York, is exempt from taxation.   If his neighbor purchase in Boston, he must pay all the taxes which Massachusetts levies with equal justice on the property of all its citizens."

This argument is as strong today as when it was written and it would be a source of confusion and injustice if through too broad expressions in a few opinions, a different conclusion from that to which it should carry us, were to obtain.

The decree of the District Court is

*Affirmed.*

Mr. Justice McReynolds, concurring.

I am unable to concur in all said to support the conclusion adopted by the Court.   To me the result seems out of harmony with the theory upon which recent opinions proceed.   There is unfortunate confusion concerning the general subject and certainly some pronouncement that can abide is desirable.

Apparently no great harm, and possibly some good, will follow a flat declaration that irrespective of analogies and

for purposes of taxation we will hold interstate commerce ends when an original package reaches the consignee and comes to rest within a State, although intended for sale there in unbroken form. It may be said that the effect on interstate commerce is not substantial and too remote, notwithstanding the rather clear logic of *Brown* v. *Maryland,* 12 Wheat. 419, to the contrary and the much discussed theory respecting freedom of interstate commerce from interference by the States, announced and developed long after *Woodruff* v. *Parham* (1868), 8 Wall. 123. Logic and taxation are not always the best of friends.