## TEXAS & N. O. R. CO. v. NORTH SIDE BELT RY. CO. et al.

(District Court, S. D. Texas, at Houston. September 26, 1925.)

No. 247.

Railroads ⟨⇒⟩7—Certificate of Commission held not necessary to construction of new road by new corporation.

Interstate Commerce Act, § 1, as amended by Transportation Act (Comp. St. Ann. Supp. 1923, § 8563), requiring carriers by railroad subject to the act to obtain a certificate of convenience and necessity before construction of a new line of road, does not apply to the construction by a new railroad corporation, which was not engaged or offered to engage in interstate transportation, of a new line of road wholly within one state.

In Equity. Suit by the Texas & New Orleans Railroad Company against the North Side Belt Railway Company and others. Decree for defendants.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, Tex., for plaintiff.

Nelson Phillips, of Dallas, Tex., W. W. Moore, Beeman Strong and J. Y. Powell, all of Houston, Tex., and Dan Moody, of Taylor, Tex., for defendants.

HUTCHESON, District Judge. This is an action, brought by the Texas & New Orleans Railroad Company, a party at interest, to enjoin the North Side Belt Railway Company from constructing its railroad on the north side of the Houston ship channel.

The record consists mainly of an agreed statement of facts, together with the testimony of Mr. Cullinan, president of the defendant railroad, the effect of which agreed statement and testimony was: That the North Side Belt Railway Company, chartered under the laws of Texas for the purpose of "constructing, owning, maintaining, and operating a terminal railway," the main line of which should be constructed "commencing at the northwest corner of the American Petroleum Company's terminal property; then extend in a westerly direction, where the proposed line would intersect the Municipal & Harbor Belt Railroad, a distance of approximately 5 miles, and located wholly within Harris county, Tex." That the North Side Belt Terminal Railway Company has never procured a permit from the Interstate Commerce Commission for the construction of its road. That the proposed line will connect with the private spur track of the American Petroleum Company, which spur track serves its terminal

located on the Houston ship channel. That the Municipal & Harbor Belt Railroad, with which it will also connect, was built by and is owned by the city of Houston, and handles both interstate and intrastate freight connecting with the other main lines of the different roads entering the port. That this belt railroad is operated by a joint association composed of various main line railroads entering Houston. That during the month of June, 1925, 50 per cent. of the freight handled from 12 of the most important industries situated along the channel was interstate freight. That on or about the 8th day of June, 1925, the respondents duly filed this proceeding for the purpose of condemning a right of way across the land of the complainant. That such proceedings were duly prosecuted resulting in an award to the complainant of $750. That, following the condemnation proceedings, respondent took possession of the land in question on the 13th day of June, 1925, and laid a track across it and is now in possession of same. That, immediately after the condemnation proceedings were completed, construction of the railroad was commenced across complainant's property, and was completed at about 11 o'clock p. m. on the date of the condemnation proceedings.

Mr. Cullinan testified: That, when the road was completed, it was intended to be operated. That he is interested in the Galena Signal Oil Company and the American Petroleum Company. That those companies are both engaged in the shipping and exporting of oil from points outside the state of Texas, and that they have private industrial tracks of their own. That the complainant serves the Galena Signal Oil Company, and through it the American Petroleum Company. That this North Side Belt Railroad was being built to give facilities which were needed there, and which ought to have been earlier built, and which the witness and those associated with him were undertaking to do, because others had failed to do it. That it was intended to make the industrial tracks owned by the American Petroleum Company a part of the North Side Belt Railway, and when the work was completed to have a complete connection through the North Side Belt Railway with the Municipal Belt for those plants. That, when the North Side Belt Railway was finished, they expected it to be operated as a terminal railroad, with all the rights and powers which its charter gave it. That the Texas & New Orleans is the only railroad that operates a line down to the western terminus of the Galena Signal, and when the North Side Belt was finished it would give these properties a connection with the Municipal Harbor Railroad.

Whether the injunction prayed for should issue or not turns upon the single question whether the Transportation Act of 1920, invoked by complainant, applies to the construction by a new railroad corporation of a physical railroad track before it becomes engaged or offers to engage in the actual transportation of interstate freight and passengers.

Respondent contends that section 402, pars. 18 to 22, of the Transportation Act (Comp. St. Ann. Supp. 1923, § 8563), does not apply to the construction of a newly constructed road, but only applies to common carriers engaged in interstate commerce at the time of the enactment of the Transportation Act of 1920, or to new carriers when and after they become impressed with an interstate character, while upon the part of complainant it is contended that a new railroad company cannot construct a new line of railroad wholly interstate. In other words, that the act gives to the Commission jurisdiction over any railroad construction, although entirely intrastate, and wholly incapable of doing an interstate business until its road has been completed.

Apart from the plain language of the act, which I think is in accord with defendant's contention that it only relates to carriers engaged in interstate commerce, I think it plain that every principle of constitutional and statutory construction denies the act the effect contended for by complainant. It must be admitted that the act is far-reaching in its intendment, and that, in so far as it gives jurisdiction over railroad construction by wholly intrastate railroads actually engaged in interstate commerce, it is more imperial than even the strictest Federalist of the early days in their fondest hopes ever dared forecast.

Well-shotted as this new arm of interstate commerce is, however, it has not been and cannot be drawn to so fine a bead as to bring within its comprehensive aim the fledgling railroad in the case at bar; for, however exclusive the power of Congress over interstate commerce, and however free from interference by states such commerce is, state laws touching and state contacts with actual physical properties lying wholly within the state cannot, under the guise of interference with interstate commerce, be avoided, unless such laws really and sub-

stantially, not technically and by fancy, affect such commerce.

A familiar illustration of that principle is found in the long line of cases, summarized and given effect to in Sonneborn Bros. v. Cureton, 262 U. S. 507, 43 S. Ct. 643, 67 L. Ed. 1095, which establishes that the commerce clause of the Constitution makes void and ineffective state laws and state regulations only where there is a definite interference with and a burden upon interstate commerce; in short, that the commerce clause must be given a practical and reasonable, and not a technical application.

Holding the view, as I do, that the construction of this railroad neither directly nor indirectly burdens or interferes with, affects or is affected by, interstate commerce in its present state, and that the act invoked, therefore, has no application, it follows that the injunction prayed for will be denied, without prejudice to the right of complainant to again apply when and as the activities of the defendant bring it within the purview of the act.

Let a decree be prepared accordingly.