## PENNSYLVANIA PETROLEUM PRODUCTS CO. v. CLARK et al.

### No. 374.

District Court, D. Rhode Island.
Feb. 8, 1932.

William A. Needham, of Providence, R. I., for complainant.

Benjamin M. McLyman, Atty. Gen., and Edward W. Day and Sigmund W. Fischer, Jr., Asst. Attys. Gen., and Comstock & Canning, of Providence, R. I., for respondents.

Before ANDERSON, Circuit Judge, and MORTON and LETTS, District Judges.

ANDERSON, Circuit Judge.

Decision of this case has been unavoidably delayed by the serious illness of one

of the sitting judges. It is a bill in equity seeking an injunction against state taxation of interstate commerce.' The complainant is a Rhode Island corporation. The respondent, James B. Berry Sons' Company, Incorporated (hereinafter called the Berry Company), is a Pennsylvania corporation with its principal place of business at Oil City, Pa. The other respondents are the members of the board of public roads, the Governor, Treasurer, and Attorney General of Rhode Island. These officials have the duty of licensing distributors of petroleum products within Rhode Island, and assessing and collecting a tax of 2 cents per gallon on sales of fuel gasoline sold within the state. The complainant and the Berry Company are both licensed distributors within Rhode Island.

In May, 1931, the complainant purchased from the Berry Company 840,000 gallons of gasoline, about half of a shipment then being made to the Berry Company from California. At the time of the purchase the gasoline was on board the steamer J. W. Van Dyke. Under date of May 27, 1931, the seller wrote the complainant:

"Confirming our telephone conversation of May 25th, we have sold you twenty thousand barrels (840,000 gallons) of California gasoline at 5⅛¢ per gallon f. o. b. your storage at the New England Terminal Company plant, Tiverton, Rhode Island, plus 2% financing charge, terms as previously arranged with you on material you have taken from us."

One of the terms of such sale was that if Rhode Island assessed a tax on this gasoline it should be paid by the purchaser. The gasoline arrived at Tiverton on or about May 30, and was thereupon unloaded and placed in storage at the New England Terminal Company plant, which was a storage plant jointly owned or controlled by the complainant and the Berry Company. This gasoline was intended in large part by the complainant for resale in Massachusetts and Connecticut. In Massachusetts such sales would be subject to a 3-cent tax and in Connecticut to a 2-cent tax.

Rhode Island assessed a tax of 2 cents, or $16,800, on the purchase of 840,000 gallons, against the Berry Company as the seller, and the seller thereupon demanded payment of this tax by the complainant. The Berry Company refused to institute legal proceedings to test the validity of the tax, but it has joined in the complainant's prayer for an injunction against the tax collection.

While in their answer the state officials deny the complainant's allegation that title to the 840,000 gallons passed from seller to purchaser while the gasoline was on board the steamer J. W. Van Dyke on the high seas, the weight of the evidence on that issue clearly sustains the complainant's contention. We find as a fact that title did pass while the gasoline was on the high seas. The sale, therefore, was in interstate commerce and the gasoline not subject to the State tax.

Parenthetically, even if title had not passed until the gasoline had reached Tiverton, it is far from clear that the tax would not be unconstitutional, under the doctrine of Sonneborn Bros. v. Cureton, 262 U. S. 506, 43 S. Ct. 643, 67 L. Ed. 1095; but we ground our decision on our finding of fact that the title passed while the gasoline was on the high seas.

From the foregoing, it is plain that the tax was invalid under the Commerce Clause of the Constitution.

The other main contention of the state is that there is no jurisdiction in equity to protect interstate commerce from state encroachment by restraining the collection of the tax here involved. We cannot sustain that contention. It clearly appears that the state board of public roads (the tax-assessing authority) wrote on June 27, 1931, to the Berry Company, with reference to this sale of 840,000 gallons to the complainant:

"Your company is registered as a distributor in this State and any sale made to another registered distributor in this State is taxable."

The evidence clearly shows that Rhode Island undertakes to impose the tax on gasoline, title to which passes between distributors, licensed under its authority, without regard to whether such sales are intrastate or interstate. It follows that the numerous transactions between complainant and the Berry Company would necessarily result in a multiplicity of suits, in order to vindicate their right to be relieved of a state burden imposed on interstate transactions. Compare Dahnke-Walker Milling Co. v. Bondurant, 257 U. S. 282, 42 S. Ct. 106, 66 L. Ed. 239; Union Pacific Railroad Co. v. Board of Com'rs of Weld County, Colo., 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110.

The situation is further complicated because the tax is imposed upon the Berry Company, whereas in the course of business it would be passed along to, and paid by, the

complainant, who is left in the position of either refraining from doing business or accepting the burden of paying the tax, although having no status to make a direct claim for its recovery under any provision of the Rhode Island statute. As a practical matter, although perhaps not in legal theory, the complainant has no direct recourse to protect its business interests. The circumstances clearly lend strength to the contention that only in equity can a really adequate remedy be found. Were these handicaps not present, as regards the complainant, a perusal of section 4 and section 11 of the Rhode Island statute (Pub. Laws R. I. 1929, c. 1405, pp. 278, 284, §§ 4, 11) indicates a grave doubt as to the sufficiency of the remedy there provided to the distributor, the Berry Company, who has been assessed an invalid tax. Section 11 provides, in part, as follows:

"Any distributor, owner or person aggrieved by any order of the board made under the provisions of this chapter, may appeal therefrom to the superior court for the counties of Providence and Bristol by filing [etc.], * * * and upon hearing such petition the court may review the evidence taken at a hearing, or investigator and examiner's reports, or other information *upon which the board's action was taken* and may in its discretion, affirm or overrule or modify the order of the board, but the taking of such appeal shall not operate as a stay of the order of the board from which appeal is taken and such order shall remain in full force and effect during the pendency of such appeal unless otherwise ordered by the court."

Nowhere in the procedure for the recovery of a tax illegally assessed is there an opportunity as of right to participate, with the privilege of cross-examination, in either the making of the full record upon which the board bases its determination, or in presenting to the court de novo testimony to support a claim of illegal assessment. The action of the court is discretionary. The appeal calls for the review of the information upon which the board's action was taken. This record may include, not merely the evidence taken at the hearing, but examiner's and investigator's records "or other information" before the board. Such a procedure for the recovery of a tax illegally collected from a transaction in interstate commerce falls far short of being a plain, adequate, and complete remedy at law.

The result is that injunction must issue, as prayed for.