## SOUTHWEST GENERAL ELECTRIC CO. v. NUNN ELECTRIC CO. (No. 2324.)

(Court of Civil Appeals of Texas. Amarillo. July 2, 1924.)

**1. Corporations** ⚖️642(4½)—**Foreign corporation held to be "doing business within the state."**

A foreign corporation was "doing business within the state," in view of Rev. St. 1911, art. 1314, under a contract by which it maintained a stock of goods within state for purposes of sale in possession of defendant, subject to disposition and distribution on independent contracts made by corporation direct with other persons.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

**2. Corporations** ⚖️642(4½)—**Authority given agent to deliver lamps to persons manufacturer might select held to involve obligation to deliver.**

Where a manufacturer maintained a stock of lamps in possession of an agent for sale, that contract merely "authorized" agent to deliver lamps to persons with whom manufacturer might contract *held* not to imply, when construed with rest of contract, that authority conferred was merely permissive, and that agent was not bound to deliver.

**3. Commerce** ⚖️40(3)—**Sale and distribution of goods shipped to agent from without state held not interstate commerce.**

Where goods were shipped by manufacturer to an agent to be *distributed within* the state, goods remaining property of manufacturer, sale and distribution thereof from such place within the state upon independent contracts made by manufacturer direct with other person was not interstate commerce, though goods might have been originally shipped from without the state.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by the Southwest General Electric Company against the Nunn Electric Company. From dismissal of suit on exception to petition, plaintiff appeals. Judgment affirmed and motion for rehearing overruled.

Fitzgerald & Hatchitt, of Wichita Falls, and Crane & Crane, of Dallas, for appellant.

Weeks, Morrow & Francis, of Wichita Falls, for appellee.

BOYCE, J. We have carefully considered the appellant's motion for rehearing, and have come to the conclusion that it should be overruled. The writer, however, is not altogether satisfied with the original opinion, and it is withdrawn, and the following adopted in final disposition of the case:

The Southwest General Electric Company, as assignee of the claim of the General Electric Company, brought this suit against the Nunn Electric Company, to recover an amount alleged to be due as a result of transactions under the contract hereinafter described. It was alleged that the General Electric Company was a foreign corporation, and the trial court sustained an exception to the petition and dismissed the suit on the ground that it appeared from the face of the petition that the General Electric Company was transacting business in Texas in respect to the matters which furnish the basis of the claim sued on, and it was not alleged that it had a permit to transact business in this state. The appeal is from this action of the trial court.

The plaintiff alleged that the General Electric Company was a New York corporation, and that the defendant was a Texas Corporation, engaged in the business of buying and selling electrical equipment in Texas;

---

that on the 1st of June, 1918, the General Electric Company entered into a contract with the Nunn Electric Company. This contract is attached to and made a part of the petition, and is, in substance, as follows:

It is styled "Appointment of Agency." By its terms the General Electric Company, called the manufacturer, appoints the Nunn Electric Company, called agent, "an agent to sell for it large Edison incandescent lamps, manufactured by the General Electric Company." The manufacturer "agrees to maintain on consignment in the custody of the agent, to be disposed of as herein provided, a stock of Edison Mazda * * * incandescent lamps; * * * that all the lamps in such consigned stock shall be and remain the property of the manufacturer until the lamps are sold, and the proceeds of all lamps sold shall be held for the benefit and for the account of the manufacturer until fully accounted for, as herein provided. The quantity of lamps and the length of time they shall remain in stock are to be at all times determined by the manufacturer." It was further stipulated that all lamps shipped to the agent under the contract should be stored, housed and displayed for sale only in the agent's regular place of business, and to be kept in such a way as to afford ready inspection by the manufacturer, and that the manufacturer should at all times have access to the place of storage of said lamps; that the agent should pay all expenses in connection with the storage, sale, and distribution of the lamps, and would guarantee the collection of all accounts for which they were sold; "that the agent shall return to the manufacturer at any time when directed by it all or any part of said consigned stock which has not been sold;" that the agent should guarantee the return of all unsold lamps; that the agent should keep books and records of its transactions in reference to such lamps which should at all times be open to inspection by the manufacturer; that the agent should conform to the educational and engineering instructions of the manufacturer, and should conduct the business "hereunder to the satisfaction of the manufacturer."

It was also provided that:

"The agent shall sell or otherwise distribute lamps from the manufacturer's stock only in package or wrappers supplied by the manufacturer, which among other things will contain a notice substantially in the following form: 'The lamp(s) contained herein is (are) manufactured by the Edison Lamp Works of General Electric Company, which sells its Mazda and Gem lamps exclusively through its own branches and agents direct to the consumer.'"

The agent was "authorized" by the contract:

"(a) To distribute lamps from the manufacturer's stock in the custody of the agent to those agents holding agency appointments from the manufacturer, whom this agent may be given by the manufacturer written authority to serve.  (b) To sell to any consumer within domestic territory * * * lamps for immediate delivery from said stock in broken package quantities, * * * and to sell from said stock to any purchaser under written contract with the manufacturer for the Edison brand of lamps on the manufacturer's standard form, and to whom the agent may be given by the manufacturer written authority to deliver lamps at the prices set forth in said contract."

In this connection it was provided that the agent should sell "only at such prices, upon such terms, and under such conditions as may be established by the manufacturer." Provision is made for monthly reports to the manufacturer on forms furnished by the manufacturer of the transactions of the agent in reference to said business, and for remittances of amounts shown thereby to be due to the manufacturer; also for forwarding to the manufacturer "the similar reports of inventories provided for in the contracts of appointment of the agents served by" the Nunn Electric Company. Provision is also made for payment of compensation for the services of the agent. This compensation is fixed at a percentage basis on the amounts received for lamps sold direct by the agent or distributed to other agents whom the Nunn Electric Company might serve, or delivered to persons to whom the General Electric Company might sell direct; the percentage compensation being different in each case.

The Nunn Electric Company was authorized by the contract to collect amounts due from agents served by it, and was be paid a commission for its services in making such collections and attending to the business transacted through such agents. It appears that the Nunn Electric Company was itself "served" by a more general distributor, the Southwest General Electric Company of Dallas, Tex., plaintiff in this case, for the contract contains this provision:

"Southwest General Electric Company, Dallas, Texas: Until further notice you are hereby authorized to act in accordance with the terms of your form B agency. Appointment or renewal thereof, in serving or receiving money due from Nunn Electric Company of Amarillo, Texas, now holding form B agency, appointment from us, dated the 1st day of June, 1918."

And the contract provided that until further notice in writing from the manufacturer the Southwest General Electric Company of Dallas, Tex., was "authorized to act for and in the place of the manufacturer in serving the agent and receiving money due the manufacturer hereunder." The account sued on is a statement of account between the "Southwest General Electric Company, agent for Edison Mazda Lamps and Nunn Electric Company, agent."

[1, 2] The Supreme Court held in the case of Allen v. Tyson-Jones Buggy Co., 91 Tex. 22, 40 S. W. 393, 714, that a foreign manufacturing corporation, placing its products in the hands of local merchants for sale on commission, was not thereby transacting

business in this state within the terms of article 1314 of our statutes (Rev. St.). The court said that—

"The selling of the buggies and phætons, which was to be done by the commission merchants, was not a business done or carried on by the corporation. It was the business of the commission merchants themselves."

That decision has been followed by the Courts of Civil Appeals in a number of cases in which writs of error were denied. See Lasater v. Purcell Mill & Elevator Co., 22 Tex. Civ. App. 33, 54 S. W. 425 (writ of error denied); Stein Double Cushion Tire Co. v. Fulton (Tex. Civ. App.) 159 S. W. 1013. It is also followed by the Commission of Appeals in the case of Falls Rubber Co. v. La Fon (Tex. Com. App.) 256 S. W. 577, in which case it is said that—

"The selling by La Fon of the tires and accessories furnished him by the rubber company was his personal affair. He chose his own customers, and exercised his own judgment with relation to his sales. The rubber company's business was simply that of consigning from a point outside of the state to La Fon within the state merchandise to be handled on commission."

The question to be decided then is whether the case at bar comes within the rule announced in these cases. It may be that, if the contract in this case contained only provisions for sale by the Nunn Electric Company of the goods of the manufacturer to customers only procured by the Nunn Electric Company, the case would be ruled by the decision in the case of Allen v. Tyson-Jones Buggy Co., supra, though the many provisions of the contract as to the details of the business of selling to the agent's own customers, the provision that both the property and the proceeds of the sale should remain the property of the manufacturer, coupled with the express requirement that in each sale it should be made to distinctly appear that the manufacturer was selling its product direct to the purchaser, make it doubtful whether even this phase of the case comes within the purview of the decision of the Supreme Court. "The business of selling" was so completely under the dominance and control of the manufacturer, and the so-called factor was left with such little discretion in the conduct thereof, that it might with some reason be said that such business was to a large extent that of the manufacturer. However this may be, we think that those provisions of the contract which make the Southwest Electric Company and the Nunn Electric Company distributing agents, for the purpose of delivering lamps to other agents on writ-

ten authority from the manufacturer, and to other persons "to whom the agent may be given by the manufacturer written authority to deliver lamps at the prices set forth in said contract (between the manufacturer and the third person)," show that in its dealings with the defendant under the contract the manufacturer was transacting business in this state. In this way the manufacturer maintains stocks of goods in this state for sale and delivery to parties with whom the manufacturer might deal, independent of its agent having possession of the goods. If the manufacturer had maintained its own warehouse and paid its employees therein a salary, making distribution through them of the goods that it might sell or otherwise dispose of within the state, there could be no doubt that this would constitute a transaction of business within the state. The fact that it accomplished the same purpose through payment of a commission to the agent, in lieu of salaries and maintenance of its own warehouse, does not, it seems to us, make any difference in the real nature of the transaction. The appellant argues that the agent was not bound by the terms of the contract to deliver lamps to persons with whom the manufacturer might contract, since the agency appointment merely "authorized" him to do so, so that, after all, the disposition of the lamps in the agent's possession was his own business. When the contract is considered as a whole, it is apparent, we think, that it was not the intention of the parties that the authority thus conferred was merely permissive. Ayers v. Courvoisier, 101 App. Div. 97, 91 N. Y. Supp. 549. Under the contract the goods remained the property of the manufacturer, and it maintained the stock "to be disposed of as herein provided." The quantity of lamps and the length of time they should remain in stock were to be "at all times determined by the manufacturer." The Nunn Electric Company accepted the agency and agreed to "perform all conditions hereof." These and other provisions of the contract show that it was contemplated that the manufacturer was intending to maintain a stock of goods in the possession of the Nunn Electric Company in the state of Texas, subject to disposition and distribution on independent contracts made by the manufacturer direct with other persons. We cannot escape the conclusion that such a course of dealing is the transaction of business by the manufacturer itself within this state.

[3] The sale and distribution of goods from such place within the state is not interstate commerce though the goods may have been originally shipped from without the state. Sonneborn Bros. v. Cureton, 262 U. S. 506, 43 Sup. Ct. 643, 67 L. Ed. 1095.