## ITEM CO., Limited, v. MUNN et al.
### (No. 1517.)

Court of Civil Appeals of Texas. Beaumont. March 31, 1927.

Commerce ⊄═40(1)—Contract for sale of newspapers by foreign corporation held transaction in interstate commerce, and foreign corporation may sue thereon without local permit.

Where foreign corporation sold and delivered newspapers to local newsdealer under contract, transaction *held* to be in interstate commerce; hence foreign corporation need not have permit to do local business in order to maintain suit on contract.

Appeal from Jefferson County Court; C. N. Ellis, Judge.

Suit by the Item Company, Limited, against E. C. Munn and others. From a judgment dismissing the suit, plaintiff appeals. Reversed and remanded.

Rose & Johnson, of Port Arthur, for appellant.

Wistner & White, of Port Arthur, for appellees.

O'QUINN, J. December 22, 1924, appellant filed suit in the county court at law of Jefferson county, Tex., upon a written contract to recover in the sum of $221.72, alleged to be due it for copies of the New Orleans Item, a newspaper published by appellant at New Orleans, La., alleged to have been sold and delivered to Munn in interstate commerce at Port Arthur, Tex., between the dates of November 28, 1923, and April 15, 1924, and also against E. B. Sutherlin and A. H. Metz, sureties for Munn to said contract, for the sum of $200, and for attorney's fees in the sum of $50.

By their second amended original answer, appellees answered with a general demurrer, special exception that appellant was a foreign corporation and had no permit to do business in Texas, a general denial, and several special defenses that need not be set out.

When the case was called for trial, after hearing the facts the court sustained the exception of defendants that appellant was a foreign corporation and had no permit to do business in Texas, and dismissed the suit. To this judgment of dismissal appellant excepted and gave notice of appeal, and the case is before us for review.

The contract upon which the suit is founded reads:

"To the New Orleans Item, Party of the First Part, of New Orleans, La.: November 28, 1923. Charge Dealer from Dec. 1, 1923.

"No. 1. You may furnish to E. C. Munn, of Port Arthur, Tex., party of the second part, such copies of the New Orleans Item as he may order, and we, the undersigned, hereby guarantee the payment to you of his bills at their several maturities, all bills being due and exigible on the 10th of each month following, in which the indebtedness shall have been incurred by the said party of the second part, and, in the event of the failure on the part of the party of the second part to meet his bills promptly, we promise severally or collectively, to pay you on demand, the full amount due, not to exceed $200.

"No. 2. The said party of the second part agrees to act as dealer for the New Orleans Item for a period of not less than three months. The said party of the second party shall give the Item Company, Limited, party of the first part thirty (30) days' written notice before resigning as their dealers. This notice can only be given by the said party of the second part after he serves as dealer for the period of months agreed in this contract. We the undersigned, are not to be held responsible for any accounts that may be incurred after the expiration of the thirty (30) days.

"No. 3. It is further agreed that in case the party of the second part wishes to resign as our dealer before the termination of this contract, the party of the second part shall pay whatever expense that is necessary to make this change. It is also agreed that in the event of the resignation of the party of the second part, that he shall show the new dealer all routes and help him deliver papers to successors for one week, until the new dealer has become familiar with the different routes and subscribers. It is further agreed that the party of the second part shall not act as dealer or distributor for any other New Orleans Newspaper until after the party of the second part has been released from this contract.

"No. 4. We, the undersigned, agree to pay to the New Orleans Item the full amount of this bond as damages, if party of the second part fails in any way to live up to this contract.

"No. 5. We, the undersigned, agree to pay all attorney fees to party of the first part if this contract is violated and legal proceedings made necessary.

"No. 6. The dealer agrees to pay 1⅜ for the daily and 2½ for the Sunday Item, and it is agreed that he is not to receive credit for unsold copies. The New Orleans Item, party of the first part, is not to be held responsible for any accounts, due dealer by subscribers. Dealer to get 1½ cents refund on all Sunday papers.

"No. 7. The said party of the second part shall turn over a complete list of the subscribers on demand to any duly authorized representative of the New Orleans Item; in case the said party of the second part fails to do this, we agree to pay, upon date of said refusal, by said letter, the full amount of this bond, unto the New Orleans Item, party of the first part. The New Orleans Item is the sole owner of the right to distribute the New Orleans Item in Port Arthur, Tex., and the dealer cannot turn the list of subscribers over to any one else without first getting permission from the circulation manager of the New Orleans Item.

"No. 8. The said party of the second part shall not, at any time, discontinue delivery or cut out any part of the route turned over to him without first obtaining consent from the circulation manager of the New Orleans Item.

"No. 9. We, the undersigned, fully understand this agreement. No verbal understanding, by any representative of the New Orleans Item, is authorized to change this agreement.

"No. 10. The said party of the second part agreed not to handle any other New Orleans newspaper during the life of this contract.

"[Signed]  A. H. Metz, Bondsman.
"E. B. Autherlin, Bondsman.
"Dealer, E. C. Munn.

"Witness: ———.

"Accepted for the Item Company, Limited, by W. P. Ussery, T. R."

The court, in response to the request of appellant, filed his findings of fact and conclusions of law, as follows:

"Findings of Fact.

"I find as facts: That during the months of December, 1923, January, February, March, and April, 1924, the Item Company, Limited, of New Orleans, La., in pursuance with the terms and provisions of the contract attached to plaintiff's original petition, shipped from New Orleans, La., to defendant E. C. Munn, at Port Arthur, Texas, copies of the New Orleans Item, upon which this suit is based, and that said E. C. Munn distributed such papers in accordance with the terms and provisions of such contract. That the New Orleans Item is a newspaper published in New Orleans, La., for distribution throughout Louisiana and adjoining states by the Item Company, Limited, and that such company is duly incorporated under the laws of the state of Louisiana, with its principal office and place of business in the city of New Orleans. That the Item Company, Limited, had not, during the time the transactions upon which this suit arose, either applied for or obtained a permit to do business in Texas.

"Conclusions of Law.

"I conclude as a matter of law that the Item Company, Limited, was during the time of the transactions out of which this suit arose, doing business in Jefferson county, Texas, without having applied for or obtained a permit as required by law, and therefore, cannot maintain this suit.  C. N. Ellis, Judge."

We think that it must be held that the matter in suit arose out of a transaction in interstate commerce, and hence that appellant was not required to have a permit to do business in order to maintain its suit. We do not deem it necessary to cite or discuss the various decisions that have been or could be cited relative to the question. Appellees cite us to the case of Southwest General Electric Co. v. Nunn Electric Co. (Tex. Civ. App.) 263 S. W. 954, and seem to mainly rely upon same to sustain their contention. They say:

"We can see no difference between the principles involved in the case at hand and the case above cited, other than it might be contended that the Southwest General Electric Company v. Nunn Electric Company, supra, was a case involving the performance of a contract of consignment, while this is a purchase of goods upon credit, but we contend that in either case the provisions of the contract relating to the sale and distribution of goods in the hands of a resident of this state were not essential to the contract of sale or the contract of assignment, and constituted the doing of acts for and in behalf of a foreign corporation which were of a purely local character, and therefore making the obtaining of a permit a prerequisite to transact business in the state of Texas."

The cited case does sustain appellees' contention, but the Supreme Court granted a writ of error in the case, and it was reversed by the Commission of Appeals, 283 S. W. 781, and the Supreme Court approved the holding of the Commission of Appeals on the "question" discussed.

The judgment is reversed and the cause remanded for a trial on the merits. Reversed and remanded.